POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for George Newman and*
*Proposed Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIO ARIAS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BIRD GLOBAL, INC. f/k/a SWITCHBACK II CORPORATION, TRAVIS VANDERZANDEN, and YIBO LING,<br><br>Defendants. | Case No. 2:22-cv-08406-ODW-AGR<br><br>MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF GEORGE NEWMAN FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS<br><br>DATE:  April 17, 2023<br>TIME:  1:30 p.m.<br>JUDGE:  Otis D. Wright II<br>CTRM:  5D, 5th Floor |

MEMORANDUM OF POINTS AND AUTHORITIES - 2:22-cv-08406-ODW-AGR; 2:22-cv-09178-ODW-AGR

KAREN CAIN, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff,

     v.

BIRD GLOBAL, INC. f/k/a SWITCHBACK II CORPORATION, TRAVIS VANDERZANDEN, and YIBO LING,

     Defendants.

Case No. 2:22-cv-09178-ODW-AGR

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ..........................................................................1

II.   ARGUMENT....................................................................................................6

    A.   NEWMAN SHOULD BE APPOINTED LEAD PLAINTIFF.................6

        1.   Newman Has the Largest Financial Interest in the Relief Sought by the Class of any Movant....................................................................6

        2.   Newman Satisfies the Requirements of Rule 23.............................. 13

    B.   LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED ........................................................................................15

    C.   THE COMPETING MOTIONS SHOULD BE DENIED ......................15

III.   CONCLUSION................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*,
No. 1:17 CV 1677, 2017 U.S. Dist. LEXIS 199868 (N.D. Ohio Dec. 4, 2017) ..................................................................................3, 5, 10, 12

*Cortina v. Anavex Life Sci. Corp.*,
No. 15-CV-10162 (JMF), 2016 U.S. Dist. LEXIS 45906 (S.D.N.Y. Apr. 5, 2016) .............................................................................................10, 12

*Dura Pharmaceuticals, Inc. v. Broudo*,
544 U.S. 336 (2005)...................................................................................8, 9

*Eichenholtz v. Verifone Holdings, Inc.*,
No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008) ......................................................................................................9

*Foster v. Maxwell Techs., Inc.*,
No. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538 (S.D. Cal. Oct. 24, 2013) .............................................................................................9

*Harari v. Pricesmart, Inc.*,
No. 19-CV-958 JLS (LL), 2019 U.S. Dist. LEXIS 174024 (S.D. Cal. Oct. 7, 2019) .........................................................................................5, 14

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ...............................................................13

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006) .........................................4, 7, 10, 11, 12

*In re Network Assocs., Inc., Sec. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999)..........................................................2, 9

*Karinski v. Stamps.com, Inc.*,
No. CV 19-1828-R, 2019 U.S. Dist. LEXIS 227879 (C.D. Cal. June 5, 2019) ....................................................................................................5, 14

*Lax v. First Merchants Acceptance Corp.*,
  Nos. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997)1, 2, 3, 4, 6, 7, 9, 10, 11, 12, 13

*Loftus v. Primero Mining Corp.*,
  No. CV 16-01034-BRO, 2016 U.S. Dist. LEXIS 204773 (C.D. Cal. May 12, 2016) ...............................................................................................2, 6

*McCormack v. Dingdong (Cayman) Ltd.*,
  No. 22-CV-7273 (VSB), 2022 U.S. Dist. LEXIS 215864 (S.D.N.Y. Nov. 30, 2022) ........................................................................................9

*Micholle v. Ophthotech Corp.*,
  No. 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018) ...........................................................................................9

*Pio v. GM Co.*,
  No. 14-11191, 2014 U.S. Dist. LEXIS 151205 (E.D. Mich. Oct. 24, 2014) ..............................................................................................7

*Police & Fire Ret. Sys. v. SafeNet, Inc.*,
  No. 06 Civ. 5797 (PAC) 2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007) ...............................................................................4, 6, 10, 11, 12

*Ruland v. InfoSonics Corp.*,
  Nos. 06cv12312006 U.S. Dist. LEXIS 79144 (S.D. Cal. Oct. 23, 2006 ................................................................... )2, 4, 6, 9, 11

*Saye v. Nio Inc.*,
  No. 22-CV-7252 (VSB), 2022 U.S. Dist. LEXIS 225498 (S.D.N.Y. Dec. 14, 2022) ...........................................................................................9

*Schueneman v. Arena Pharm., Inc.*,
  No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, (S.D. Cal. Aug. 8, 2011); ................................................................2, 4, 9, 11

*Vataj v. Johnson*,
  No. 19-cv-06996-HSG, 2020 U.S. Dist. LEXIS 21039 (N.D. Cal. Feb. 3, 2020) ..............................................................................................5, 13

*Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*,
    No. 16-CV-02400 (AT)(SN), 2016 U.S. Dist. LEXIS 164682 (S.D.N.Y.
    Nov. 29, 2016) ...............................................................................3, 5, 7, 10, 12

**Statutes**

15 U.S.C. § 78u-4.......................................................................................1, 6, 15

Private Securities Litigation Reform Act of 1995 .................. 1, 2, 5, 6, 7, 13, 14, 15

**Rules**

Fed. R. Civ. P. 23 ......................................................................................1, 5, 13, 14

Movant Newman[1] respectfully submits this Memorandum of Points and Authorities in further support of his motion for consolidation, appointment as Lead Plaintiff, and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 26); and in opposition to the competing motions of: (i) Timothy R. Kane ("Kane") (Dkt. No. 13); (ii) Lawrence Lou ("Lou") (Dkt. No. 14); (iii) Glen Dworkin ("Dworkin") (Dkt. No. 18); and (iv) David Boulware ("Boulware") (Dkt. No. 19).

## I.    PRELIMINARY STATEMENT

The Related Actions are putative securities class action lawsuits on behalf of investors in Bird securities.[2]  As with all federal class action securities lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the Related Actions; and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, that movant is Newman, who clearly possesses the largest financial interest in this litigation of any movant as assessed under the so-called *Lax* factors, first articulated in the seminal decision in *Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715 *et al.*, 1997 U.S. Dist. LEXIS 11866, at *17-18 (N.D. Ill. Aug. 6, 1997), and widely adopted

---

[1] All capitalized terms herein are defined in Newman's moving brief, unless otherwise indicated.  *See* Dkt. No. 27.

[2] All of the competing movants before the Court agree that the Related Actions should be consolidated. *See* Dkt. Nos. 13-14, 18-19, 26.

MEMORANDUM OF POINTS AND AUTHORITIES - 2:22-cv-08406-ODW-AGR; 2:22-cv-09178-ODW-AGR

1

by courts nationwide as guidance for the PSLRA lead plaintiff process. *See Loftus v. Primero Mining Corp.*, No. CV 16-01034-BRO (RAOx), 2016 U.S. Dist. LEXIS 204773, at \*10-11 (C.D. Cal. May 12, 2016); *Ruland v. InfoSonics Corp.*, Nos. 06cv1231 BTM(WMc) *et al.*, 2006 U.S. Dist. LEXIS 79144, at \*11-12 (S.D. Cal. Oct. 23, 2006). The four *Lax* factors guiding the lead plaintiff selection process are: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (*i.e.*, the total number of purchased shares minus the number of those shares sold before the alleged corrective disclosure or event); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *Lax*, 1997 U.S. Dist. LEXIS 11866, at \*17-18. Courts in the Ninth Circuit, including this District, routinely assess a lead plaintiff movant's financial interest holistically with reference to all four *Lax* factors. *See, e.g.*, *Loftus*, 2016 U.S. Dist. LEXIS 204773, at \*10-13; *Ruland*, 2006 U.S. Dist. LEXIS 79144, at \*11-17.

In examining all four *Lax* factors holistically, courts in the Ninth Circuit place substantial weight on the number of shares retained (*i.e.*, net shares purchased) because shares retained are the ***only*** shares for which a plaintiff has recoverable losses. *See, e.g.*, *Ruland*, 2006 U.S. Dist. LEXIS 79144, at \*16-17 (appointing movant that "has the greatest number of net shares purchased" as lead plaintiff because that movant "has the largest potential recovery"); *Schueneman v. Arena Pharm., Inc.*, No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at \*15-16 (S.D. Cal. Aug. 8, 2011); *In re Network Assocs.,*

*Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999).  Additionally, when there is only a small difference between competing movants' claimed losses, courts generally treat those losses as roughly equivalent and look to the other three *Lax* factors—retained shares, shares purchased, and funds expended—to determine which movant has the largest financial interest.  *See, e.g.*, *Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*, No. 16-CV-02400 (AT)(SN), 2016 U.S. Dist. LEXIS 164682, at \*4-6 (S.D.N.Y. Nov. 29, 2016); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 1:17 CV 1677, 2017 U.S. Dist. LEXIS 199868, at \*9 (N.D. Ohio Dec. 4, 2017).

The following table sets forth Newman's financial interest compared to those of the competing movants:

| Movant | Shares Purchased | Funds Expended | Net Shares Purchased (Shares Retained) | Loss |
|---|---|---|---|---|
| Newman | 50,000 | $56,027 | 50,000 | $43,265 |
| Boulware | 13,000 | $56,805 | 12,000 | $46,290 |
| Lou | 5,500 | $46,175 | 5,500 | $44,525 |
| Kane | 5,674 | $50,782 | 4,179 | $37,597 |
| Dworkin | 2,000 | $20,290 | 2,000 | $19,863 |

As the table reflects, Newman has the largest financial interest of any competing movants under an appropriately holistic analysis that takes into account all four *Lax* factors.  Here, of the three *Lax* factors that "provide a more objective assessment of a movant's financial interest than the losses suffered," *Westchester*, 2016 U.S. Dist. LEXIS

MEMORANDUM OF POINTS AND AUTHORITIES - 2:22-cv-08406-ODW-AGR; 2:22-cv-09178-ODW-AGR

164682, at *5—*i.e.*, shares purchased, funds expended, and shares retained—Newman individually leads by a significant margin with respect to two of those three factors, shares purchased and shares retained. Critically, Newman retained 50,000 shares, ***over 50% more*** than the 23,679 shares retained by all of the competing movants ***combined***, tipping the balance greatly in Newman's favor of having the largest financial interest in this litigation. *See Ruland*, 2006 U.S. Dist. LEXIS 79144, at *16-17; *Schueneman*, 2011 U.S. Dist. LEXIS 87373, at *15-16. In addition, Newman purchased 50,000 shares, ***almost 50% more*** than the 26,174 shares purchased by all of the competing movants ***combined***. Only one competing movant, Boulware, claims a larger figure with respect to the last of the three more objective *Lax* factors, funds expended. However, the marginal difference between Boulware's funds expended and Newman's is *de minimis* ($56,805 vs. $56,027, a difference of only 1.38%).

With respect to the least objective of the four *Lax* factors, monetary loss, the difference between Newman's claimed loss and those of Boulware and Lou (*i.e.*, the only competing movants alleging a larger loss than Newman) is only 6.76% and 2.87%, respectively, rendering their losses roughly equal to Newman's. *See In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006) (holding that a 17% difference in losses was "roughly equal"); *Police & Fire Ret. Sys. v. SafeNet, Inc.*, No. 06 Civ. 5797 (PAC) *et al.*, 2007 U.S. Dist. LEXIS 97959, at *5-7 (S.D.N.Y. Feb. 21, 2007) (treating 2% difference in losses "as roughly equal"). Accordingly, when considering Newman's

significantly larger number of shares purchased and, most importantly, shares retained, Newman clearly possesses the largest financial interest in this litigation of any competing movant. *See Westchester*, 2016 U.S. Dist. LEXIS 164682, at \*4-6; *City of Hollywood*, 2017 U.S. Dist. LEXIS 199868, at \*9.

In addition to his significant financial interest, Newman also satisfies the adequacy and typicality requirements of Rule 23. Newman is aware of no conflict between his interests and those of the Class, his losses incurred as a result of the Defendants' alleged malfeasance gives him a sufficient stake in the outcome of the Related Actions to ensure vigorous advocacy, and in Pomerantz, Newman has retained qualified and experienced counsel. *See Karinski v. Stamps.com, Inc.*, No. CV 19-1828-R, 2019 U.S. Dist. LEXIS 227879, at \*4 (C.D. Cal. June 5, 2019); *Harari v. Pricesmart, Inc.*, No. 19-CV-958 JLS (LL), 2019 U.S. Dist. LEXIS 174024, at \*7-8 (S.D. Cal. Oct. 7, 2019). Moreover, Newman's claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the claims of the other Class members. *See, e.g.*, *Vataj v. Johnson*, No. 19-cv-06996-HSG, 2020 U.S. Dist. LEXIS 21039, at \*6 (N.D. Cal. Feb. 3, 2020). Further demonstrating his adequacy, Newman has submitted a detailed Declaration providing the Court with biographical information about himself and attesting to, *inter alia*, his understanding of the significance of his motion, the responsibilities of a Lead Plaintiff appointed pursuant to the PSLRA, and his readiness to shoulder these responsibilities on behalf of the Class. *See generally* Dkt. No. 28-4.

For the foregoing reasons, Newman respectfully requests that the Court grant his motion in its entirety and deny the competing motions.

## II.   ARGUMENT

### A.   NEWMAN SHOULD BE APPOINTED LEAD PLAINTIFF

#### 1.   Newman Has the Largest Financial Interest in the Relief Sought by the Class of any Movant

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts generally assess financial interest with reference to the four *Lax* factors: (1) shares purchased; (2) funds expended; (3) net shares purchased (*i.e.*, shares retained); and (4) monetary loss.  *See Loftus*, 2016 U.S. Dist. LEXIS 204773, at \*10 (finding "[d]istrict courts have typically considered the [four *Lax*] factors to determine which plaintiff has the largest financial interest"); *Ruland*, 2006 U.S. Dist. LEXIS 79144, at \*11-12 (same).

Courts around the country, including in the Ninth Circuit and this District specifically, have routinely assessed a lead plaintiff movant's financial interest holistically with reference to all four *Lax* factors  *See, e.g.*, *Loftus*, 2016 U.S. Dist. LEXIS 204773, at \*10-13 (assessing financial interest by "[t]aking into account all four [*Lax*] factors"); *Ruland*, 2006 U.S. Dist. LEXIS 79144, at \*11-17 (same); *SafeNet*, 2007 U.S. Dist. LEXIS

97959, at *5-6 (same); *Doral*, 414 F. Supp. 2d at 403 (same). This is, in part, because courts recognize that the first three *Lax* factors—shares purchased, funds expended, and shares retained—provide a more objective assessment of a lead plaintiff movant's financial interest within the meaning of the PSLRA, as opposed to monetary loss, which is subject to change based on the methodology applied to calculate losses and changes in future share prices. *See, e.g.*, *Pio v. GM Co.*, No. 14-11191, 2014 U.S. Dist. LEXIS 151205, at *11 (E.D. Mich. Oct. 24, 2014) ("The Court declines the invitation to ignore all but the fourth *Lax* factor in deciding which movant has the largest financial interest in this litigation" because "the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses."); *Westchester*, 2016 U.S. Dist. LEXIS 164682, at *5 ("The[ first three *Lax*] factors provide a more objective assessment of a movant's financial interest than the losses suffered, given that shares purchased, net shares purchased, and funds expended are static markers set in stone during the class period, whereas losses suffered may be subject to future changes in the price per share.").

In examining all four *Lax* factors holistically, many courts place substantial weight on the number of shares retained (*i.e.*, net shares purchased) because an investor's shares retained at the time an alleged fraud is revealed are the ***only*** shares damaged by the corrective disclosures—*i.e.*, revelations of defendants' wrongdoing—that are responsible for the share price declines that caused the class's losses, and thus the only shares for

MEMORANDUM OF POINTS AND AUTHORITIES - 2:22-cv-08406-ODW-AGR; 2:22-cv-09178-ODW-AGR

7

which a plaintiff has recoverable losses.  Particularly, as the Supreme Court held in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), in an action under the federal securities laws, the only relief that can be sought by a plaintiff or a class is the loss proximately caused by the defendant's wrongdoing.  544 U.S. at 338.  Accordingly, under *Dura*, any recoverable losses must stem from a cognizable cause—*i.e.*, here, the revelation of Defendants' alleged fraud through corrective disclosures.  *See id*. at 342 ("[If] the purchaser sells the shares . . . before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

Here, the only allegations of losses in the Related Actions were when the corrective disclosures caused Bird's share price to decline on November 14, 2022, after the Company announced that it would restate its financial statements for certain interim periods following a review of the Company's recognition of revenue on certain trips completed by customers of its Sharing business.  *See* Dkt. No. 1 ¶¶ 27-28; *Karen Cain v. Bird Global, Inc. et al.*, No. 2:22-cv-09178 (C.D. Cal.), Dkt. No. 1 ¶¶ 27-28.  By the terms of the complaints on file then, an investor would not have any recoverable losses for shares they sold prior to that information damaging Bird's share price.  There is no other theory of damages alleged in the Related Actions and, as such, only shares attributable to the share price decline on that corrective disclosure date—*i.e.*, ***shares retained*** as of that corrective disclosure date (of which Newman, as discussed in detail below, has significantly more of than all of the competing movants ***combined***)—were damaged by Defendants'

wrongdoing. *See, e.g.*, *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *11 (N.D. Cal. Aug. 22, 2008) ("loss causation can only be demonstrated **with respect to shares retained as of the date of the corrective disclosure**" (emphasis added)); *Foster v. Maxwell Techs., Inc.*, No. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538, at *10 (S.D. Cal. Oct. 24, 2013) ("The misrepresentation does not lead to a loss **if the purchaser sells the shares before the truth is revealed**." (Emphasis added.)); *Ruland*, 2006 U.S. Dist. LEXIS 79144, at *16-17 (appointing movant with "the greatest number of net shares purchased" because that movant "has the largest potential recovery"); *Schueneman*, 2011 U.S. Dist. LEXIS 87373, at *15-16 (same); *Network Assocs.*, 76 F. Supp. 2d at 1027 ("At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery."); *Saye v. Nio Inc.*, No. 22-CV-7252 (VSB), 2022 U.S. Dist. LEXIS 225498, at *11-12 (S.D.N.Y. Dec. 14, 2022) ("[S]ecurities actions only provide recoveries for 'economic losses that misrepresentations actually cause.'" (quoting *Dura*, 544 U.S. at 345)); *McCormack v. Dingdong (Cayman) Ltd.*, No. 22-CV-7273 (VSB), 2022 U.S. Dist. LEXIS 215864, at *8-9 (S.D.N.Y. Nov. 30, 2022) (same); *Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120, at *15 (S.D.N.Y. Mar. 13, 2018) (same).

With respect to the fourth *Lax* factor, monetary loss, when the difference between competing movants' claimed losses is so small as to be roughly equal, courts readily look

MEMORANDUM OF POINTS AND AUTHORITIES - 2:22-cv-08406-ODW-AGR; 2:22-cv-09178-ODW-AGR

to the other three *Lax* factors to determine which movant has the largest financial interest. *See, e.g.*, *Westchester*, 2016 U.S. Dist. LEXIS 164682, at *4-6 (looking to other *Lax* factors where there was only a 16% difference between losses); *Cortina v. Anavex Life Sci. Corp.*, No. 15-CV-10162 (JMF), 2016 U.S. Dist. LEXIS 45906, at *3-4 (S.D.N.Y. Apr. 5, 2016) (looking to other *Lax* factors where there was only a "roughly 3.5%" difference between losses); *SafeNet*, 2007 U.S. Dist. LEXIS 97959, at *5-7 (treating 2% difference in losses "as roughly equal" and looking to other *Lax* factors); *City of Hollywood*, 2017 U.S. Dist. LEXIS 199868, at *9 ("find[ing] that the difference in the approximate losses does not overcome the combined weight of the first three factors"); *see also Doral*, 414 F. Supp. 2d at 403 (holding that a 17% difference in losses was "roughly equal" and appointing movant with lower losses based on other considerations).

As the chart at p. 3 illustrates, Newman clearly possesses a larger financial interest in this litigation than any individual competing movant under a holistic *Lax*-factor analysis involving all four factors. Here, of the three *Lax* factors that "provide a more objective assessment of a movant's financial interest than the losses suffered," *Westchester*, 2016 U.S. Dist. LEXIS 164682, at *5—*i.e.*, shares purchased, funds expended, and shares retained—Newman individually leads all competing movants ***combined*** by significant margins with respect to two of those three factors, shares purchased (50,000 vs. 26,174, a difference of ***62.56%***) and shares retained (50,000 vs. 23,679, a difference of ***71.45%***). Indeed, with respect to arguably the most important *Lax* factor, shares retained, which

MEMORANDUM OF POINTS AND AUTHORITIES - 2:22-cv-08406-ODW-AGR; 2:22-cv-09178-ODW-AGR

correlates with a movant's potential recovery in the litigation, Newman retained 50,000 shares, *over 50% more* than the 23,679 shares retained by all of the competing movants *combined*, tipping the balance greatly in favor of Newman having the largest financial interest in this litigation.  *See Ruland*, 2006 U.S. Dist. LEXIS 79144, at *16-17 (placing the greatest weight on shares retained); *Schueneman*, 2011 U.S. Dist. LEXIS 87373, at *15-16 (same).  Moreover, Newman purchased 50,000 shares, *almost 50% more* than the 26,174 shares purchased by all of the competing movants *combined*.

Only one competing movant, Boulware, claims a larger figure with respect any of the more objective *Lax* factors, specifically, funds expended.  However, the marginal difference between Boulware's funds expended and Newman's is *de minimis* ($56,805 vs. $56,027, a difference of only 1.38%).  As such, Boulware cannot be said to meaningfully lead Newman with respect to funds expended, leaving the two movants effectively tied with respect to this *Lax* factor.

Although Boulware and Lou both claim to have incurred slightly larger losses—the fourth *Lax* factor—than Newman, the difference between their losses and Newman's is similarly insignificant.  There is only a marginal difference of 6.76% between Boulware's claimed loss and Newman's ($46,290 vs. $43,265) and an even smaller difference of 2.87% between Lou's claimed loss and Newman's ($44,525 vs. $43,265), rendering those losses roughly equal.  *See Doral*, 414 F. Supp. 2d at 403 (holding that a 17% difference in losses was "roughly equal"); *SafeNet*, 2007 U.S. Dist. LEXIS 97959, at *5-7 (treating

2% difference in losses "as roughly equal"). Accordingly, when considering Newman's significant lead in two of the three remaining *Lax* factors, shares retained and shares purchased, and Boulware's *de minimis* lead over Newman in the only remaining *Lax* factor, funds expended, Newman clearly has the largest financial interest in this litigation. *See Westchester*, 2016 U.S. Dist. LEXIS 164682, at *4-6 (discounting 16% difference between losses where "[t]he other [*Lax*] factors . . . overwhelmingly favor[ed]" the movant with lower losses and appointing that movant as lead plaintiff); *Cortina*, 2016 U.S. Dist. LEXIS 45906, at *3-4 (discounting "roughly 3.5%" difference between losses where two other *Lax* factors "heavily favor[ed]" the movant with lower losses and appointing that movant as lead plaintiff); *SafeNet*, 2007 U.S. Dist. LEXIS 97959, at *5-7 (treating 2% difference in losses "as roughly equal" and appointing movant with lower losses as lead plaintiff because, *inter alia*, the other *Lax* factors favored that movant); *City of Hollywood*, 2017 U.S. Dist. LEXIS 199868, at *9 (appointing movant with lower losses because "the Court finds that the difference in the approximate losses does not overcome the combined weight of the first three factors"); *Doral*, 414 F. Supp. 2d at 403 (holding that a 17% difference in losses was "roughly equal" and appointing movant with lower losses based on other considerations).

Here, as discussed above, there is only a 6.76% difference between Boulware's losses and Newman's losses, and only a 2.87% difference between Lou's losses and Newman's losses, rendering each of their losses roughly equal. In stark contrast, there is

a striking difference of *122.58%* between Newman's 50,000 shares retained and Boulware's 12,000 shares retained, as well as an even larger difference of *160.36%* between Newman's 50,000 shares retained and Lou's 5,500 shares retained. Likewise, there is a difference of *117.46%* between Newman's 50,000 shares purchased and Boulware's 13,000 shares purchased, and a difference of *160.36%* between Newman's 50,000 shares purchased and Lou's 5,500 shares purchased. Meanwhile, there is only a 1.38% difference between Newman's funds expended and those of the only movant that beats Newman on this factor, namely, Boulware ($56,805 vs. $56,027).

In sum, Newman leads by an overwhelming margin when evaluating two of the three more objective *Lax* factors, shares purchased and shares retained, while trailing by only a negligible margin when evaluating either of the two remaining *Lax* factors, funds expended and loss. As such, Newman clearly has the largest financial interest in this litigation within the meaning of the PSLRA.

### 2.  Newman Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, Newman has also made the requisite *prima facie* showing that he satisfies the typicality and adequacy requirements of Rule 23. *See In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002). First, Newman's claims satisfy the typicality requirement of Rule 23(a)(3) because his claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See Vataj*, 2020 U.S.

Dist. LEXIS 21039, at *6. Newman, like other Class members, purchased Bird securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions that drove Bird's share price downward. These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3). *Id.*

Second, Newman satisfies the adequacy requirement of Rule 23(a)(4) because there is no evidence of antagonism or conflict between his interests and those of the Class, he has a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, and in Pomerantz, he has retained qualified and experienced counsel with expertise in litigating securities fraud class actions, among other matters. *See, e.g.*, *Karinski*, 2019 U.S. Dist. LEXIS 227879, at *4; *Harari*, 2019 U.S. Dist. LEXIS 174024, at *7-8. Newman has further demonstrated his adequacy by the submission, with his motion papers, of a sworn Declaration, attesting to, *inter alia*, his understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of fellow Class members. *See* Dkt. No. 28-4.

*****

Because Newman has the largest financial interest of any eligible Lead Plaintiff candidate in the relief sought by the Class and otherwise satisfies the requirements of Rule

23, he is the presumptive "most adequate plaintiff" of the Class within the meaning of the PSLRA.

To overcome the strong presumption entitling Newman to appointment as Lead Plaintiff, the PSLRA requires "***proof***" that the presumptive Lead Plaintiff is inadequate. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) (emphasis added). No such proof exists in this case and any speculative arguments to the contrary should be flatly rejected.

## B. LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. *See id.* § 78u-4(a)(3)(B)(v). The Court should interfere with the Lead Plaintiff's selection only when necessary to "protect the interests of the class." *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Newman has selected Pomerantz as Lead Counsel for the Class. As its resume reflects, Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors. *See* Dkt. No. 28-5. Thus, the Court may be assured that by approving Newman's selection of counsel, the members of the Class will receive the best legal representation available.

## C. THE COMPETING MOTIONS SHOULD BE DENIED

As discussed in detail in Section II.A.1., *supra*, no competing movant for appointment as Lead Plaintiff has a larger financial interest in the relief sought by the Class

MEMORANDUM OF POINTS AND AUTHORITIES - 2:22-cv-08406-ODW-AGR; 2:22-cv-09178-ODW-AGR

in the Related Actions than Newman.  This fact alone mandates denial of the competing motions.

## III.   CONCLUSION

For the foregoing reasons, Newman respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Newman as Lead Plaintiff for the Class; and (3) approving Newman's selection of Pomerantz as Lead Counsel for the Class.

Dated:  February 6, 2023                    Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for George Newman and Proposed Lead Counsel for the Class*

BRONSTEIN, GEWIRTZ &
GROSSMAN, LLC
Peretz Bronstein
(*pro hac vice* application forthcoming)
60 East 42nd Street, Suite 4600
New York, New York 10165
Telephone: (212) 697-6484
Facsimile: (212) 697-7296
peretz@bgandg.com

*Additional Counsel for George Newman*

MEMORANDUM OF POINTS AND AUTHORITIES - 2:22-cv-08406-ODW-AGR; 2:22-cv-09178-ODW-AGR

CERTIFICATE OF SERVICE

I hereby certify that on February 6, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Jennifer Pafiti*
Jennifer Pafiti

MEMORANDUM OF POINTS AND AUTHORITIES - 2:22-cv-08406-ODW-AGR; 2:22-cv-09178-ODW-AGR

17