Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
Email:  reed@hbsslaw.com
        lucasg@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiff
David Boulware*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| MARIO ARIAS, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BIRD GLOBAL, INC. F/K/A SWITCHBACK II CORPORATION, TRAVIS VANDERZANDEN, and YIBO LING,<br><br>Defendants. | No. 2:22-cv-08406-ODW-AGR<br><br>**JOINT SUBMISSION RE: LEAD PLAINTIFF**<br><br>Date:       April 17, 2023<br>Time:       1:30 p.m.<br>Courtroom:  5D, 5th Floor<br>Judge:      Hon. Otis D. Wright, II |
| KAREN CAIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>BIRD GLOBAL, INC. F/K/A SWITCHBACK II CORPORATION, TRAVIS VANDERZANDEN, and YIBO LING,<br><br>Defendants. | No. 2:22-cv-09178-ODW-AGR |

JOINT SUBMISSION RE: LEAD PLAINTIFF
Case No.: 2:22-cv-08406-ODW-AGR
011147-11/2198742 V1

# TABLE OF CONTENTS

**Page**

I. COMPETING APPROACHES TO CALCULATING LARGEST FINANCIAL INTEREST (15 U.S.C. § 78U-4(A)(3)(B)(III)(I)(BB)) ...................................................................... 1

    A. Competing Approaches to Weighing of the Four *Lax* Factors ................ 2

        1. The Fourth *Lax* Factor, Approximate Losses Suffered, Weighed as Most Determinative. ................................................... 2

        2. Holistic Approach. ...................................................................... 2

    B. Competing Approaches to Calculating the Competing Movants' Approximate Losses ................................................................ 4

        1. The Traditional Last-in-First-Out Approximate Loss Approach ....................................................................................... 4

        2. Calculation of the "Mean Trading Price" Under the PSLRA's 90-Day Damages Limitation ......................................... 4

        3. *Dura*-Adjusted LIFO Loss Method ............................................. 5

        4. *Dura*-Adjusted FIFO Loss Method ............................................. 6

II. WHICH APPROACH TO CALCULATING LARGEST FINANCIAL INTEREST SHOULD BE USED ................................................. 7

    A. Movant Boulware's Positions .................................................................. 7

        1. The Court Should Weigh the Fourth *Lax* Factor, Approximate Losses Suffered, As Most Determinative.................................................................................. 7

        2. The Court Should Apply the Traditional LIFO Approximate Loss Calculation ...................................................... 9

            a. The 90-day Lookback Period Should Begin on November 15, 2022 ......................................................... 10

        3. Alternatively, the Court Should Apply the *Dura*-Adjusted LIFO Loss Method ...................................................... 11

B.     Movant Newman's Position........................................................12

C.     Movant Lou's Position...............................................................14

D.     Movant Kane's Position............................................................16

III.   WHO HAS THE LARGEST FINANCIAL INTEREST UNDER EACH APPROACH.............................................................................16

    A.     Competing Approaches to Weighing of the Four *Lax* Factors.............16

        1.    The Fourth *Olsen*/*Lax* Factor, Approximate Losses Suffered, Weighed as Most Determinative..................................16

           a.    Boulware's Position .......................................................16

           b.    Lou's Position................................................................17

        2.    Holistic Approach.........................................................17

           a.    Newman's Position.......................................................17

    B.     Competing Approaches to Calculating the Competing Movants' Approximate Losses ...............................................19

        1.    The Traditional Last-in-First-Out Approximate Loss Approach....................................................................19

           a.    Boulware's Position .......................................................19

           b.    Newman's Position.......................................................20

           c.    Lou's Position................................................................20

           d.    Kane's Position..............................................................20

        2.    *Dura*-Adjusted LIFO Loss Method .............................................23

           a.    Boulware's Position .......................................................23

           b.    Newman's Position.......................................................23

           c.    Lou's Position................................................................23

        3.    *Dura*-Adjusted FIFO Loss Method ...........................................23

                a.      Lou's and Boulware's Position ........................................ 23

                b.      Newman's Position............................................................ 24

IV.   REBUTTAL EVIDENCE (15 U.S.C. § 78U-4(A)(3)(B)(III)(II)).................. 24

     A.    Kane's Position ........................................................................... 24

     B.    Lou's Position ............................................................................. 30

V.    OTHER RELEVANT MATTER ...................................................................... 30

     A.    Boulware's Position .................................................................... 30

     B.    Lou's Position ............................................................................. 32

         1.     Lou's Background Information Not Required But Provided .......................................................................... 32

         2.     Lou's Certification is PSLRA-Compliant ................................... 33

     C.    Newman's Position ..................................................................... 33

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Bally Total Fitness Sec. Litig.*,
  2005 WL 627960 (N.D. Ill. Mar. 15, 2005) ....................................................... 7, 8

*Blitz v. AgFeed Indus., Inc.*,
  2012 WL 1192814 (M.D. Tenn. Apr. 10, 2012) .................................................... 9

*Bodri v. Gopro, Inc.*,
  2016 WL 1718217 (N.D. Cal. Apr. 28, 2016)....................................................... 9

*Borteanu v. Nikola Corp.*,
  507 F. Supp. 3d 1128 (D. Ariz. 2020) ............................................................ 31, 32

*Camp v. Qualcomm Inc.*,
  2019 WL 3554798 .................................................................................................. 28

*Camp v. Qualcomm Inc.*,
  Case No. 18-cv-1208 (AJB) (BLM), 2019 WL 277360
  (S.D. Cal. Jan. 22, 2019).......................................................................... 25, 27, 31

*In re Cavanaugh*,
  306 F.3d 726 (9th Cir.2002) ...................................................................... 24, 30, 32

*In re Cheetah Mobile, Inc. Sec. Litig.*,
  2021 WL 99635 (C.D. Cal. Jan. 12, 2021)............................................................ 7

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*,
  No. 1:17 CV 1677, 2017 U.S. Dist. LEXIS 199868 (N.D. Ohio
  Dec. 4, 2017).................................................................................................... 3, 18

*Cook v. Allergan*,
  2019 WL 1510894 (S.D.N.Y. Mar. 21, 2019)....................................................... 9

*Dura Pharms., Inc. v. Broudo*,
  544 U.S. 336 (2005) ......................................................................................*passim*

*Eichenholtz v. Verifone Holdings, Inc.*,
  No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633 (N.D. Cal.
  Aug. 22, 2008) ....................................................................................................... 14

*Ferreira v. Funko, Inc.*,
2020 WL 3246328 (C.D. Cal. June 11, 2020).......................................................... 7

*Foster v. Maxwell Techs., Inc.*,
No. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538
(S.D. Cal. Oct. 24, 2013) ....................................................................................... 14

*Garbowski v. Tokai Pharms., Inc.*,
302 F. Supp. 3d 441 (D. Mass. 2018).........................................................25, 26, 27

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
209 F.R.D. 447 (C.D. Cal. 2002)............................................................................ 25

*Hodges v. Akeena Solar, Inc.*,
263 F.R.D. 528 (N.D. Cal. 2009) ..................................................................... 12, 15

*Holmes v. Comm'r of Internal Revenue*,
134 F.2d 219 (3d Cir. 1943) ................................................................................... 16

*HsingChing Hsu. v. Puma Biotechnology, Inc.*,
2019 WL 11637311 (C.D. Cal. May 22, 2019)..................................................... 6, 7

*Jaffe Pension Plan v. Household Int'l, Inc.*,
756 F. Supp. 2d 928 (N.D. Ill. 2010).................................................................. 12, 15

*Kasilingam v. Tilray, Inc.*,
2020 WL 4530357 (S.D.N.Y. Aug. 6, 2020) ..................................................... 31, 32

*Kniffin v. Micron Tech., Inc.*,
379 F. Supp. 3d 259 (S.D.N.Y. 2019) ...................................................................... 6

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
136 F. Supp. 3d 1159 (C.D. Cal. 2015).............................................................*passim*

*Lax v. First Merchants Acceptance Corp.*,
Nos. 97 C 2715 et al., 1997 U.S. Dist. LEXIS 11866, at *17-18 (N.D.
Ill. Aug. 6, 1997) ...........................................................................................*passim*

*Loftus v. Primero Mining Corp.*,
No. CV 16-01034-BRO, 2016 U.S. Dist. LEXIS 204773
(C.D. Cal. May 12, 2016) ......................................................................................... 3

*In re Lucent Techs. Inc. Sec. Litig.*,
221 F. Supp. 2d 472 (D. N.J. 2001)......................................................................... 26

*Lundy v. Ideanomics, Inc.*,
  2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020)...................................................11, 30

*McCormack v. Dingdong (Cayman) Ltd.*,
  No. 22-CV-7273 (VSB), 2022 U.S. Dist. LEXIS 215864
  (S.D.N.Y. Nov. 30, 2022) .................................................................................14

*McGee v. Am. Oriental Bioengineering, Inc.*,
  2012 WL 12895668 (C.D. Cal. Oct. 16, 2012) ....................................................4

*Micholle v. Ophthotech Corp.*,
  No. 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120
  (S.D.N.Y. Mar. 13, 2018) .................................................................................14

*Mullen v. Wells Fargo & Co.*,
  2021 WL 965344 (N.D. Cal. Mar. 15, 2021) .......................................................8

*In re Network Assocs., Inc., Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1999).......................................................3, 14, 25

*Nicolow v. Hewlett Packard Co.*,
  2013 WL 792642 (N.D. Cal. Mar. 4, 2013) .........................................................9

*Patel v. Reata Pharms., Inc.*,
  549 F. Supp. 3d 559 (E.D. Tex. 2021) ...............................................................31

*Perez v. HEXO Corp.*,
  No. 19-cv-10965 (NRB), 2020 WL 905753 (S.D.N.Y.
  Feb. 25, 2020) ..............................................................................................26, 31

*Pio v. GM Co.*,
  No. 14-11191, 2014 U.S. Dist. LEXIS 151205 (E.D. Mich.
  Oct. 24, 2014) ...................................................................................................12

*Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*,
  2004 WL 5326262 (N.D. Cal. May 27, 2004) ................................................12, 15

*Rodriguez v. DraftKings Inc.*,
  2021 WL 5282006 (S.D.N.Y. Nov. 12, 2021) .....................................................12

*Ruland v. InfoSonics Corp.*,
  Nos. 06cv1231 BTM(WMc) et al., 2006 U.S. Dist. LEXIS 79144, at
  *11-17 (S.D. Cal. Oct. 23, 2006)................................................................3, 14, 17

*Saye v. Nio Inc.*,
  No. 22-CV-7252 (VSB), 2022 U.S. Dist. LEXIS 225498
  (S.D.N.Y. Dec. 14, 2022) ........................................................................ 14

*Schueneman v. Arena Pharm., Inc.*,
  No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at *15-16
  (S.D. Cal. Aug. 8, 2011) ................................................................... 3, 14, 17

*Shi v. Ampio Pharms., Inc.*,
  2019 WL 13149926 (C.D. Cal. Sept. 27, 2019) ......................................... 6

*In re Snap Inc. Sec. Litig.*,
  No. 17-cv-03679 (SVW) (AGR), 2019 WL 2223800 (C.D. Cal.
  Apr. 1, 2019) ........................................................................................... 25

*In re UTStarcom, Inc. Sec. Litig.*,
  2010 WL 1945737 (N.D. Cal. May 12, 2010) ...................................... 12, 15

*Veal v. LendingClub Corp.*,
  2018 WL 5879645 (N.D. Cal. Nov. 7, 2018) ............................................ 32

*In re Veeco Instruments, Inc.*,
  233 F.R.D. 330 (S.D.N.Y. 2005) .......................................................... 12, 15

*In re Watchguard Sec. Litig.*,
  2005 WL 8188936 (W.D. Wash. July 13, 2005) ....................................... 10

*Waterford Twp. Police v. Mattel, Inc.*,
  2017 WL 10667732 (C.D. Cal. Sept. 29, 2017) ....................................... 32

*Weisz v. Calpine Corp.*,
  2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) ........................................ 11

*Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit
  Funds v. Brixmor Prop. Grp., Inc.*,
  No. 16-CV-02400 (AT)(SN), 2016 U.S. Dist. LEXIS 164682
  (S.D.N.Y. Nov. 29, 2016) ........................................................... 3, 13, 17, 18

*In re Wireless Facilities, Inc.*,
  253 F.R.D. 607, 620 (S.D. Cal. 2008) ................................................... 12, 15

*In re Wrap Techs., Inc. Sec. Exch. Act Litig.*,
  2021 WL 71433 (C.D. Cal. Jan. 7, 2021) ..................................... 8, 9, 21, 32

**STATUTES**

15 U.S.C. § 78u–4(a)(3)(B)(iii)(II)..................................................................*passim*

Private Securities Litigation Reform Act of 1995 ................................................*passim*

Securities Act of 1933 Section 27(a)(2) ...................................................................... 28

Securities Exchange Act ..................................................................................... 28, 34

**OTHER AUTHORITIES**

26 C.F.R. § 1.1012-1 ..................................................................................................... 16

Rule 23 ..................................................................................................................*passim*

Pursuant to the Court's February 27, 2023 Order to File Joint Submission re: PSLRA Lead Plaintiff (ECF No. 47), Movants David Boulware ("Boulware"), Lawrence Lou ("Lou"), George Newman ("Newman") and Timothy R. Kane ("Kane) (collectively, "Competing Movants"), who each maintain that they remain a candidate for Lead Plaintiff, by and through their respective counsel, met and conferred, including by participating in a real-time meeting via videoconference on March 6, 2023, and thereafter exchanging written communications, to discuss the legal and factual issues raised by the Lead Plaintiff question.

As a result of this meet and confer effort, and pursuant to the February 27 Order, the Movants respectfully submit the following Joint Statement.

## I.   COMPETING APPROACHES TO CALCULATING LARGEST FINANCIAL INTEREST (15 U.S.C. § 78U-4(A)(3)(B)(III)(I)(BB))

Consistent with this Court's prior holdings, the Competing Movants agree that "[t]he PSLRA does not specify how to assess which movant has the 'largest financial interest in the relief sought by the class,' and the Ninth Circuit has left it to the district courts to 'select accounting methods that are both rational and consistently applied' in making this determination." *See*, *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015) (quoting *In re Cavanaugh*, 306 F.3d 726, 730 n. 4 (9th Cir.2002)).

Also, in accordance with this Court's prior holdings, the Competing Movants agree that district courts within the Ninth Circuit generally consider the four "*Olsen/Lax*" factors to determine which plaintiff has the greatest financial interest. *Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. at 1163. Those factors are: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) total net funds expended during the class period; and (4) the approximate losses suffered during the class period." *Id*.

JOINT SUBMISSION RE: LEAD PLAINTIFF - 1
Case No.: 2:22-cv-08406-ODW-AGR
011147-11/2198742 V1

Further, the Competing Movants agree that the chart set forth below accurately reflects the Competing Movants' financial interest with respect to the first three *Olsen*/*Lax* factors:

| Movant | No. of Shares Purchased | Net Funds Expended | Net Shares Purchased |
|--------|-------------------------|--------------------|----------------------|
| Boulware | 13,000 | $56,805 | 12,000 |
| Kane | 5,674 | $50,782 | 4,179 |
| Lou | 5,500 | $46,175 | 5,500 |
| Newman | 50,000 | $56,027 | 50,000 |

As set forth below, however, the Competing Movants maintain different views as to:

(i)   how the *Olsen*/*Lax* factors should be weighed in this case; and

(ii)   the method by which the Court should calculate the competing movants' approximate losses.

Finally, as further discussed herein, a dispute remains as to how the 90-day lookback price should be calculated were the Court to apply the Traditional Last-in-First-Out Approximate Loss Approach.

**A.   Competing Approaches to Weighing of the Four *Lax* Factors**

**1.   The Fourth *Lax* Factor, Approximate Losses Suffered, Weighed as Most Determinative.**

The Court considers the fourth *Olsen*/*Lax* factor, approximate losses, as most determinative in identifying the movant with the largest financial loss. *See Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. at 1163 (Wright, II, J.).

**2.   Holistic Approach.**

The financial interest of a movant should be assessed under the factors articulated in *Lax v. First Merchants Acceptance Corp.*, Nos. 97 C 2715 et al., 1997 U.S. Dist. LEXIS 11866, at *17-18 (N.D. Ill. Aug. 6, 1997), which are (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (i.e., the total number of purchased shares minus the number of

those shares sold before the alleged corrective disclosure or event); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. *Lax*, 1997 U.S. Dist. LEXIS 11866, at *17-18.

Further, courts in the Ninth Circuit, including this District, routinely assess a lead plaintiff movant's financial interest holistically with reference to all four *Olsen/Lax* factors. *See, e.g.*, *Loftus v. Primero Mining Corp.*, No. CV 16-01034-BRO (RAOx), 2016 U.S. Dist. LEXIS 204773, at *10-13 (C.D. Cal. May 12, 2016); *Ruland v. InfoSonics Corp.*, Nos. 06cv1231 BTM(WMc) et al., 2006 U.S. Dist. LEXIS 79144, at *11-17 (S.D. Cal. Oct. 23, 2006).

Finally, in examining all four *Olsen/Lax* factors holistically, courts in the Ninth Circuit place substantial weight on the number of shares retained (i.e., net shares purchased) because shares retained are the only shares for which a plaintiff has recoverable losses. *See, e.g.*, *Ruland*, 2006 U.S. Dist. LEXIS 79144, at *16-17 (appointing movant that "has the greatest number of net shares purchased" as lead plaintiff because that movant "has the largest potential recovery"); *Schueneman v. Arena Pharm., Inc.*, No. 10cv1959 BTM(BLM), 2011 U.S. Dist. LEXIS 87373, at *15-16 (S.D. Cal. Aug. 8, 2011); *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1027 (N.D. Cal. 1999). Additionally, when there is only a small difference between competing movants' claimed losses, courts generally treat those losses as roughly equivalent and look to the other three *Olsen/Lax* factors—retained shares, shares purchased, and funds expended—to determine which movant has the largest financial interest. *See, e.g.*, *Westchester Putnam Ctys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*, No. 16-CV-02400 (AT)(SN), 2016 U.S. Dist. LEXIS 164682, at *4-6 (S.D.N.Y. Nov. 29, 2016); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 1:17 CV 1677, 2017 U.S. Dist. LEXIS 199868, at *9 (N.D. Ohio Dec. 4, 2017).

**B.     Competing Approaches to Calculating the Competing Movants' Approximate Losses**

**1.     The Traditional Last-in-First-Out Approximate Loss Approach**

A movant's traditional "last-in, first-out" (LIFO) approximate losses are calculated by taking the difference between the net amount the movant paid for securities during the Class Period and the value of the securities retained through the end of the Class Period, using the 90-day mean trading price of the security after the last day of the Class Period (the "90-day Lookback Period"). 15 U.S.C. § 78u–4(e)(1). To the extent the movant sold any of the Bird Global securities after the Class Period but before the expiration of the 90-day Lookback Period, the value of the securities is the higher of the actual sale price for the security or the rolling mean trading price of the security through the date of sale. 15 U.S.C. § 78u–4(e)(2). For purposes of calculating traditional approximate losses, the "mean trading price" of a security is the average of the daily trading price of that security, determined as of the close of the market each day during the 90-day Lookback Period. 15 U.S.C. § 78u–4(e)(3). Finally, to the extent the movant held any shares prior to the Class Period, but sold shares during the Class Period, the approximate loss should be calculated on a LIFO accounting basis, which matches the plaintiff's last purchases during the damage period with its first sales during the period. *McGee v. Am. Oriental Bioengineering, Inc.*, 2012 WL 12895668, at *3 (C.D. Cal. Oct. 16, 2012).

**2.     Calculation of the "Mean Trading Price" Under the PSLRA's 90-Day Damages Limitation**

As noted above, a dispute remains as to calculating the "mean trading price" under the PSLRA's 90-day damages limitation. Specifically, the parties disagree as to when the 90-day period begins.

As set forth below, Movant Kane contends that the 90-day period begins on November 14, 2022, the calendar date of the corrective disclosure event alleged in the complaints filed by counsel for Lou and Newman. Both initial complaints in this

consolidated action, as filed by counsel for movants Lou and Newman, allege that the market reacted to the November 14, 2022 disclosure, closing down "$0.0069 per share, or 15.94%, from the prior trading date to close *on November 14, 2022* at $0.364 per share." *See* ECF No. 1, at 7 (No. 2:22-cv-08406) and ECF No. 1, at 8 (No.2:22-cv-09178) (emphasis added). Based upon the allegations in both complaints, the November 14, 2022 alleged corrective disclosure, on which the date the 90-day period begins, took place during market hours on November 14, 2022.

By contrast, Movants Boulware, Lou, and Newman submit that the 90-day period begins on November 15, 2022, the actual trading date on which the information fully correcting the misstatement or omission that is the basis for the action was disseminated to and digested by the market.

### 3.    *Dura*-Adjusted LIFO Loss Method

Some courts have adopted methods for calculating losses at the lead plaintiff stage that address concerns raised by the Supreme Court's decision in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005). In *Dura*, the Supreme Court held that in cases based on a fraud-on-the-market theory, a purchaser of stock at fraudulently inflated prices cannot recover without proving loss caused by the defendant's fraud as opposed to ordinary market forces. *See Dura*, 544 U.S. at 346. This is because securities fraud actions are intended "not to provide investors with broad insurance against market losses, but to protect them against those economic losses that misrepresentations actually cause." *Id*. at 345. The Supreme Court observed that where a purchaser buys shares at an inflated price but "sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Id*. at 342. The *Dura*-adjusted LIFO method considers losses only with respect to shares retained at the time of a corrective disclosure. Consistent with the traditional LIFO approximate loss method, the *Dura*-adjusted LIFO technique calculates the plaintiff's damages by matching the plaintiff's last purchases during the class period with its first sales during

the class period. *See, e.g., Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 264 (S.D.N.Y. 2019) (describing *Dura*-adjusted LIFO loss calculation).

### 4. *Dura*-Adjusted FIFO Loss Method

The Court determines the "largest financial interest" under the PSLRA by finding the movant with the largest approximate losses, here Lou. Dkt. No. 15 at 7; *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1162 (C.D. Cal. 2015) (Wright, II, J.) ("The competing motions of the Barocios and Erodiades boil down to one issue: which one of them suffered the greatest financial loss as a result of Yingli's alleged fraud.").

To determine the largest losses, the Court should not credit losses that are not compensable. *See Dura*, 544 U.S. at 346. Here, there is only one corrective disclosure at the end of the class period on November 14, 2022. Dkt. No. 1 ¶ 27; *Cain v. Bird Global, Inc., et al.*, case no. 2:22-cv-09178-SI, Dkt. No. 1 ¶ 27. Therefore, any losses sustained from sales prior to the lone corrective disclosure are not compensable and should not be credited. *See Dura*, 544 U.S. at 342, 346 ("[If] the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss. [. . .] The [PSLRA] thereby makes clear Congress' intent to permit private securities fraud actions for recovery where, but only where, plaintiffs adequately allege and prove the traditional elements of causation and loss."); *see also Shi v. Ampio Pharms., Inc.*, 2019 WL 13149926, at *3 (C.D. Cal. Sept. 27, 2019) ("Here, the complaint alleges that the class members purchased shares at artificially inflated prices, but does not allege a corresponding fall in price until the corrective disclosure was made. Thus, any shares that were sold prior to this disclosure are not properly included in a defendant's loss because their price was not negatively affected by the alleged wrongdoing."); *HsingChing Hsu. v. Puma Biotechnology, Inc.*, 2019 WL 11637311, at *2 (C.D. Cal. May 22, 2019) ("An inflated purchase payment may not lead to any loss when, for example, the purchaser quickly sells the shares 'before the relevant truth begins to leak out.'") (citing *Dura*, 544 U.S. at 342).

JOINT SUBMISSION RE: LEAD PLAINTIFF - 6
Case No.: 2:22-cv-08406-ODW-AGR
011147-11/2198742 V1

Excluding losses from sales made prior to the corrective disclosure, Lou has the largest losses of $44,525—compared to $43,818 of David Boulware, $43,265 of George Newman, and $37,569 of Timothy Kane.

FIFO, here, as opposed to LIFO, does not *inflate* losses but accurately provides the financial interest of movants in this case.

## II.    WHICH APPROACH TO CALCULATING LARGEST FINANCIAL INTEREST SHOULD BE USED

### A.    Movant Boulware's Positions

#### 1.    The Court Should Weigh the Fourth *Lax* Factor, Approximate Losses Suffered, As Most Determinative.

Consistent with *Yingli Green Energy Holding Co. Ltd.*, the Court should "consider the fourth factor, the approximate losses suffered, as most determinative in identifying the plaintiff with the largest financial loss." 136 F. Supp. at 1163, quoting *Richardson v. TVIA, Inc.*, 2007 WL 1129344, at *3 (N.D. Cal. Apr. 16, 2007). Indeed, as this Court recognized in *Yingli Green Energy Holding Co. Ltd.*, "most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Id.*, citing *Takara Trust v. Molex Inc.*, 229 F.R.D. 577, 579 (N.D. Ill. 2005); *see also*, *In re Cheetah Mobile, Inc. Sec. Litig.*, 2021 WL 99635, at *3 (C.D. Cal. Jan. 12, 2021); *Ferreira v. Funko, Inc.*, 2020 WL 3246328, at *5 (C.D. Cal. June 11, 2020).

As is often the case with other applicants who lack the largest approximate losses, Movant Newman contends that the Court should place undue weight on the first and third *Olsen*/*Lax* factors, number of shares purchased, and net shares purchased. But as explained in *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *5 (N.D. Ill. Mar. 15, 2005), where the court rejected a similar attempt to downplay the significance of approximate losses, "[i]t is not self-evident, though, what weight these factors should be given in relation to the amount of loss, or even why we should consider them at all, and the [Newman] provides no explanation." *Id*. Rather, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period. The inquiry need not and should not be complicated by also considering the number of

shares or the net [shares purchased] because those statistics do not advance the ball." *Id.*

Time and again, in cases where the movants split the first three *Olsen/Lax* factors, this Court and others have emphasized the approximate losses suffered to determine the plaintiff with the largest financial loss. *Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. at 1163 (appointing investor with largest approximate losses as lead plaintiff, despite the fact a competing movant had purchased more net shares and larger net expenditures). This makes sense because the PSLRA's test at this stage requires the Court to determine which movant has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *see, also, Mullen v. Wells Fargo & Co.*, 2021 WL 965344, at *3 (N.D. Cal. Mar. 15, 2021) (collecting cases) ("Consistent with the plain language of Section 78u, the fourth [*Lax-Olsten* factor], approximate loss, calculation matters most."); Here, the interest "sought by the class" is monetary damages based upon recoverable losses. As such, losses – not how many net shares a movant purchased – is the best measure of the "relief sought by the class."

Newman's emphasis on number of shares purchased and net shares purchased factors is further undermined by the PSLRA's statutory cap on damages, 15 U.S.C. § 78u–4(e)(1). That provision states that damages may not exceed the "difference between the purchase or sale price paid ... by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which [disclosure is made]." *Id.* Thus, the PSLRA plainly contemplates consideration of the purchase price. Here, Boulware generally purchased his Bird shares early in the Class Period at average purchase price of $4.79 per share, while Newman purchased his shares much later in the Class Period at an average of only $1.12 per share. Newman's emphasis on the first and third *Olsen/Lax* factors, however, completely ignores this dramatic purchase price discrepancy. *See, e.g., In re Wrap Techs., Inc. Sec. Exch. Act Litig.*, 2021 WL 71433, at *2 (C.D. Cal. Jan. 7, 2021)

(rejecting movant's contention to emphasize retained shares since it ignored purchase price).

### 2. The Court Should Apply the Traditional LIFO Approximate Loss Calculation

When calculating estimated losses, courts invariably use the traditional LIFO approximate loss calculation. *See, e.g., Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *3 (N.D. Cal. Apr. 28, 2016); *Nicolow v. Hewlett Packard Co.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013). Only after realizing that he did not possess the largest LIFO loss, Lou switched gears to suggest that the Court should adopt an alternative estimated *Dura*-adjusted loss calculation. But the competing movants provide no reason for changing course, and courts routinely reject such eleventh-hour shifts in strategy as gamesmanship. *See In re Wrap Techs., Inc. Sec. Exch. Act Litig.*, 2021 WL 71433, at *2 (refusing to adopt alternative loss calculation where "[competing movant] raised the *Dura* loss calculation only in opposition after finding [presumptive lead plaintiff] had a greater LIFO loss."); *Cook v. Allergan*, 2019 WL 1510894, at *3 (S.D.N.Y. Mar. 21, 2019) (the fact that a movant that initially presented its losses under LIFO and "alter[ed] its calculation [to *Dura*] when it learned that someone else had a larger loss – lends validity to the conclusion that the impact of <u>Dura</u> on the proposed lead plaintiffs' loss calculations is at best uncertain, and so should be discounted.").

Putting aside the inconsistencies in Lou's competing analysis of financial interest, many courts decline to apply a loss causation methodology premised on *Dura* at the lead plaintiff appointment stage because doing so requires the court to prematurely delve into a complicated merits analysis where expert opinion is needed. *See, e.g., Allergan*, 2019 WL 1510894, at *3 (declining to conduct a "*Dura*" analysis to determine financial interest at the lead plaintiff stage); *Blitz v. AgFeed Indus., Inc.*, 2012 WL 1192814, at *4 (M.D. Tenn. Apr. 10, 2012) (noting that *Dura* "was not a case involving the appointment of a Lead Plaintiff under the PSLRA, and *Dura* does

not discuss FIFO or LIFO losses"). That is, applying the competing movants' "*Dura*" approach requires the Court to identify the disclosure of the alleged fraud that caused compensable losses. Because "numerous factors may affect the price of a security," in its opinion in *Dura*, "[t]he Supreme Court did not suggest that a court should guess about the effect of these as-yet-unknown factors in selecting a lead plaintiff, nor did it consider the issue." *In re Watchguard Sec. Litig.*, 2005 WL 8188936, at *4 n.6 (W.D. Wash. July 13, 2005).

### a. The 90-day Lookback Period Should Begin on November 15, 2022

In calculating the Competing Movants' respective traditional LIFO approximate loss calculations, the Court should hold the 90-day lookback period begins on November 15, 2022, the actual trading date on which the information fully correcting the misstatement or omission that is the basis for the action was disseminated to and digested by the market. Specifically, in addition to Bird Global filing a Form 8-K with the SEC announcing that the Company would restate its consolidated financial statements on November 14, 2022 prior to the market opening, later that same day, *five minutes after the close of the market at 4:05 pm Eastern time*, Bird Global released restated historical revenue and announced that it was withdrawing its previous fiscal year 2022 revenue guidance, in part due to the restatement.[1] Thereafter, from 4:30 pm - 5:12 pm Eastern, the Company also hosted a Q3 2022 earnings call with analysts, in which it expanded on the cause and impact of the restatement on Bird's historical revenue.[2]

---

[1] *See*, "Bird Announces Third Quarter 2022 Financial Results," available at https://seekingalpha.com/pr/19020697-bird-announces-third-quarter-2022-financial-results

[2] *See*, "Bird Global, Inc. (BRDS) Q3 2022 Earnings Call Transcript," available at https://seekingalpha.com/article/4557785-bird-global-inc-brds-q3-2022-earnings-call-transcript

JOINT SUBMISSION RE: LEAD PLAINTIFF - 10
Case No.: 2:22-cv-08406-ODW-AGR
011147-11/2198742 V1

Since corrective information was released and the fraud was not fully revealed until after the close of the market on November 14, 2022, Movants Boulware, Lou and Newman submit the calculation of the mean trading price should commence on November 15, 2022, the actual trading date on which the information fully correcting the misstatement or omission that is the basis for the action was disseminated to and digested by the market. By contrast, Movant Cain's argument to begin the 90-day lookback period on November 14, 2022 effectively ignores this corrective disclosed information and excludes November 14, 2022 from the class period contrary to the alleged defined Class Period in the complaints. Accordingly, it is reasonable to begin the 90-day lookback period on November 15, 2022. *See*, *e.g.*, *Lundy v. Ideanomics, Inc.*, 2020 WL 7389027, at *3, n. 7 (S.D.N.Y. Dec. 16, 2020) (rejecting movant's attempt to start 90-day period because argument ignored corrective information and was contrary to the alleged class definition).

### 3. Alternatively, the Court Should Apply the *Dura*-Adjusted LIFO Loss Method

Alternatively, if the Court were inclined to adopt a loss calculation addressing *Dura*'s concerns, however, the Court should apply the *Dura*-adjusted LIFO Loss Method. In instances where courts have adjusted movant's approximate losses for *Dura*, they have universally done so utilizing the LIFO technique. Here, Lou artificially decreases Boulware's *Dura*-adjusted loss by using the widely criticized "first-in-first-out" method. *See Weisz v. Calpine Corp.*, 2002 WL 32818827, at *7 (N.D. Cal. Aug. 19, 2002) (observing that "courts have generally rejected FIFO as an appropriate means of calculating losses in securities fraud cases.").

By contrast, no court has ever endorsed the *Dura*-adjusted FIFO loss method Lou offers, and Lou presents no compelling reason to do so here. Rather, the cases Lou cites merely reference the movant's or the class representative's approximate out-of-pocket losses calculated on a FIFO basis, making no adjustment for class period

transactions under *Dura*.[3]  In those cases, the movant or class representative held shares prior to the class period. To offset sales during the class period with the plaintiff's pre-class period stock holdings, the loss calculation matched, in chronological order, the first shares sold during the class period with the share held at the beginning of the class period.

First, since no Movant held Bird securities prior to the class period, the movant's LIFO and FIFO approximate losses are identical. So even applying the FIFO calculation referenced in those cases, the approximate loss calculation remains the same.

Second, as noted above, the overwhelming trend nationwide has been to use LIFO to calculate such losses. *See, e.g., Rodriguez v. DraftKings Inc.*, 2021 WL 5282006, at \*4 (S.D.N.Y. Nov. 12, 2021) (collecting cases across the nation endorsing LIFO and criticizing FIFO).

**B.     Movant Newman's Position**

A holistic approach should be used to calculate financial interest because courts recognize that the first three *Olsen/Lax* factors—shares purchased, funds expended, and shares retained—provide a more objective assessment of a lead plaintiff movant's financial interest within the meaning of the PSLRA, as opposed to monetary loss, which is subject to change based on the methodology applied to calculate losses and changes in future share prices. *See, e.g., Pio v. GM Co.*, No. 14-11191, 2014 U.S. Dist.

---

[3] *See*, *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532 (N.D. Cal. 2009) (referencing FIFO approximate out of pocket loss calculation to deal with pre-class period shares, and not making any *Dura* adjustment.); *In re UTStarcom, Inc. Sec. Litig.*, 2010 WL 1945737, at \*6 (N.D. Cal. May 12, 2010) same); *Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*, 2004 WL 5326262, at \*3 (N.D. Cal. May 27, 2004) (same); *Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 937 (N.D. Ill. 2010) (same); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) (same); *In re Wireless Facilities, Inc.*, 253 F.R.D. 607, 620 (same).

LEXIS 151205, at *11 (E.D. Mich. Oct. 24, 2014) ("The Court declines the invitation to ignore all but the fourth [*Olsen/Lax*] factor in deciding which movant has the largest financial interest in this litigation" because "the first three factors provide the most objective measurement of a movant's stake in the litigation because the fourth factor is heavily dependent on the method applied and numbers chosen to calculate losses."); *Westchester*, 2016 U.S. Dist. LEXIS 164682, at *5 ("The [first three *Olsen/Lax*] factors provide a more objective assessment of a movant's financial interest than the losses suffered, given that shares purchased, net shares purchased, and funds expended are static markers set in stone during the class period, whereas losses suffered may be subject to future changes in the price per share.").

Further, in examining all four *Olsen/Lax* factors holistically, many courts place substantial weight on the number of shares retained (i.e., net shares purchased) because an investor's shares retained at the time an alleged fraud is revealed are the only shares damaged by the corrective disclosures—i.e., revelations of defendants' wrongdoing—that are responsible for the share price declines that caused the class's losses, and thus the only shares for which a plaintiff has recoverable losses. Particularly, as the Supreme Court held in *Dura*, in an action under the federal securities laws, the only relief that can be sought by a plaintiff or a class is the loss proximately caused by the defendant's wrongdoing. 544 U.S. at 338. Accordingly, under *Dura*, any recoverable losses must stem from a cognizable cause—i.e., here, the revelation of Defendants' alleged fraud through corrective disclosures. *See id.* at 342 ("[If] the purchaser sells the shares . . . before the relevant truth begins to leak out, the misrepresentation will not have led to any loss.").

The only theory of damages alleged in the Related Actions is that corrective disclosures caused Bird's share price to decline. By the terms of the complaints on file then, an investor would not have any recoverable losses for shares they sold prior to that information damaging Bird's share price. As such, only shares attributable to the share price decline on that corrective disclosure date—i.e., shares retained as of that

corrective disclosure date—were damaged by Defendants' wrongdoing. *See, e.g.*, *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *11 (N.D. Cal. Aug. 22, 2008) ("loss causation can only be demonstrated ***with respect to shares retained as of the date of the corrective disclosure***" (emphasis added)); *Foster v. Maxwell Techs., Inc.*, No. 13-cv-00580-BEN-RBB, 2013 U.S. Dist. LEXIS 154538, at *10 (S.D. Cal. Oct. 24, 2013) ("The misrepresentation does not lead to a loss ***if the purchaser sells the shares before the truth is revealed***." (Emphasis added.)); *Ruland*, 2006 U.S. Dist. LEXIS 79144, at *16-17 (appointing movant with "the greatest number of net shares purchased" because that movant "has the largest potential recovery"); *Schueneman*, 2011 U.S. Dist. LEXIS 87373, at *15-16 (same); *Network Assocs.*, 76 F. Supp. 2d at 1027 ("At least as a first approximation, the candidate with the most net shares purchased will normally have the largest potential damage recovery."); *Saye v. Nio Inc.*, No. 22-CV-7252 (VSB), 2022 U.S. Dist. LEXIS 225498, at *11-12 (S.D.N.Y. Dec. 14, 2022) ("[S]ecurities actions only provide recoveries for 'economic losses that misrepresentations actually cause.'" (quoting Dura, 544 U.S. at 345)); *McCormack v. Dingdong (Cayman) Ltd.*, No. 22-CV-7273 (VSB), 2022 U.S. Dist. LEXIS 215864, at *8-9 (S.D.N.Y. Nov. 30, 2022) (same); *Micholle v. Ophthotech Corp.*, No. 17-CV-210 (VSB), 2018 U.S. Dist. LEXIS 41120, at *15 (S.D.N.Y. Mar. 13, 2018) (same).

## C.    **Movant Lou's Position**

Lou's approach to calculating the largest financial interest—excluding non-compensable losses on a first-in-first out basis ("FIFO") should be used as his approach is fully in line with the PSLRA, accounting principles, and precedent from the Supreme Court (*Dura*).

Moreover, by including non-recoverable economic losses as certain competing movants may suggest, the Court would simply be appointing as lead plaintiff the movant who does *not* have the largest financial *interest* in this case as non-recoverable losses caused by intra-Class Period buying and selling do not create an interest in the

case under *Dura*. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ("**has the largest financial interest in the relief sought by the class**[.]") (emphasis added).

While loss calculations are not at issue in every PSLRA lead plaintiff appointment process, courts in the Ninth Circuit utilize this longstanding, clear, and rational approach. *Hodges v. Akeena Solar, Inc.*, 263 F.R.D. 528, 532 (N.D. Cal. 2009) ("A court may also look to the 'first-in, first-out' ('FIFO') method, which measures loss by treating the first share purchased as the first share sold."); *In re UTStarcom, Inc. Sec. Litig.*, 2010 WL 1945737, at *6 (N.D. Cal. May 12, 2010) ("The Court has accepted calculations of harm under FIFO at the class certification stage and in appointing lead plaintiffs."); *Plumbers & Pipefitters Loc. 572 Pension Fund v. Cisco Sys., Inc.*, 2004 WL 5326262, at *3 (N.D. Cal. May 27, 2004) ("Plaintiffs seek damages consistent with the first-in-first-out ('FIFO') accounting method, which has been established as a legitimate method for computing losses or gains from stock purchases or sales.").

Likewise, courts in other circuits utilize this approach. *E.g., Jaffe Pension Plan v. Household Int'l, Inc.*, 756 F. Supp. 2d 928, 937–38 (N.D. Ill. 2010) ("FIFO has been established as a reasonable measure for computing losses or gains from stock purchases or sales in the past, and as such this Court holds that FIFO is the appropriate method for matching purchases and sales given the tax laws and recent developments in the accounting world."); *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 333 (S.D.N.Y. 2005) ("I agree that FIFO is the appropriate methodology to apply in matching purchases and sales for the purpose of considering the financial stake of a movant for lead plaintiff status, just as it is the well-settled methodology for computing losses on securities for tax purposes.").

FIFO is also used for settlement purposes. *See In re Wireless Facilities, Inc.*, 253 F.R.D. 607, 620 (S.D. Cal. 2008) ("For Settlement Class Members who held Wireless Securities at the beginning of the Settlement Class Period or made multiple purchases or other acquisitions or sales during the Settlement Class Period, the first-in,

first-out ('FIFO') method will be applied to such holdings, purchases and sales for purposes of calculating a claim.").

Moreover, FIFO calculations are favored in other contexts as well—such as by the Internal Revenue Service. 26 C.F.R. § 1.1012-1 ("if a taxpayer sells or transfers shares of stock in a corporation that the taxpayer purchased or acquired on different dates or at different prices and the taxpayer does not adequately identify the lot from which the stock is sold or transferred, the stock sold or transferred is charged against the earliest lot the taxpayer purchased or acquired to determine the basis and holding period of the stock."); *Holmes v. Comm'r of Internal Revenue*, 134 F.2d 219, 221 (3d Cir. 1943) ("The First-in, first-out rule is so old and well known that any extended explanation of it in this opinion would be superfluous. It is incorporated in Article 22(a)-8 of Treasury Regulations 94, promulgated under the Revenue Act of 1936.")

### D.    Movant Kane's Position

Movant, Timothy Kane ("Kane"), believes that the approach to calculating the largest financial interest used in Kane's lead plaintiff motion is controlling.

### III.    WHO HAS THE LARGEST FINANCIAL INTEREST UNDER EACH APPROACH

### A.    Competing Approaches to Weighing of the Four *Lax* Factors

#### 1.    The Fourth *Olsen/Lax* Factor, Approximate Losses Suffered, Weighed as Most Determinative

##### a.    Boulware's Position

Should the Court weigh the fourth *Olsen/Lax* factor, approximate losses suffered, as the most determinative *Olsen/Lax* factor, either Boulware or Lou would have the largest financial interest, depending on the loss methodology the Court applies. As set forth below, whether the Court applies the traditional LIFO approximate loss, *Dura*-adjusted LIFO or *Dura*-adjusted FIFO method, Kane and Newman would still maintain a smaller loss than Boulware and Lou.

**b.**    **Lou's Position**

As this Court has held before, approximate loss is the best indicator of largest financial interest. *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1162 (C.D. Cal. 2015) (Wright, II, J.). Importantly, losses must be compensable losses under the law and the claims at issue. *See Dura*, 544 U.S. at 346.

**2.**    **Holistic Approach**

**a.**    **Newman's Position**

Under an approach that examines all four *Olsen/Lax* factors holistically, Newman possesses a larger financial interest in this litigation than any individual competing movant. Of the three *Olsen/Lax* factors that "provide a more objective assessment of a movant's financial interest than the losses suffered," *Westchester*, 2016 U.S. Dist. LEXIS 164682, at *5—i.e., shares purchased, funds expended, and shares retained—Newman individually leads all competing movants ***combined*** by significant margins with respect to two of those three factors, shares purchased (50,000 vs. 26,174, a difference of 62.56%) and shares retained (50,000 vs. 23,679, a difference of ***71.45%***). Indeed, with respect to arguably the most important *Olsen/Lax* factor, shares retained, which correlates with a movant's potential recovery in the litigation, Newman retained 50,000 shares, over 50% more than the 23,679 shares retained by all of the competing movants combined, tipping the balance greatly in favor of Newman having the largest financial interest in this litigation. *See Ruland*, 2006 U.S. Dist. LEXIS 79144, at *16-17 (placing the greatest weight on shares retained); *Schueneman*, 2011 U.S. Dist. LEXIS 87373, at *15-16 (same). Moreover, Newman purchased 50,000 shares, ***almost 50% more*** than the 26,174 shares purchased by all of the competing movants ***combined***.

Only one competing movant, Boulware, claims a larger figure with respect any of the more objective *Olsen/Lax* factors, specifically, funds expended. However, the marginal difference between Boulware's funds expended and Newman's is *de minimis* ($56,805 vs. $56,027, a difference of only 1.38%). As such, Boulware cannot be said

to meaningfully lead Newman with respect to funds expended, leaving the two movants effectively tied with respect to this *Olsen/Lax* factor.

Although Boulware and Lou both claim to have incurred slightly larger losses—the fourth *Olsen/Lax* factor—than Newman, the difference between their losses and Newman's is similarly insignificant. There is only a marginal difference of 6.76% between Boulware's claimed loss and Newman's ($46,290 vs. $43,265) and an even smaller difference of 2.87% between Lou's claimed loss and Newman's ($44,525 vs. $43,265), rendering those losses roughly equal. *See Doral*, 414 F. Supp. 2d at 403 (holding that a 17% difference in losses was "roughly equal"); *SafeNet*, 2007 U.S. Dist. LEXIS 97959, at *5-7 (treating 2% difference in losses "as roughly equal"). Accordingly, when considering Newman's significant lead in two of the three remaining *Olsen/Lax* factors, shares retained and shares purchased, and Boulware's *de minimis* lead over Newman in the only remaining *Olsen/Lax* factor, funds expended, Newman clearly has the largest financial interest in this litigation. *See Westchester*, 2016 U.S. Dist. LEXIS 164682, at *4-6 (discounting 16% difference between losses where "[t]he other [*Olsen/Lax*] factors . . . overwhelmingly favor[ed]" the movant with lower losses and appointing that movant as lead plaintiff); *Cortina*, 2016 U.S. Dist. LEXIS 45906, at *3-4 (discounting "roughly 3.5%" difference between losses where two other [*Olsen/Lax*] factors "heavily favor[ed]" the movant with lower losses and appointing that movant as lead plaintiff); *SafeNet*, 2007 U.S. Dist. LEXIS 97959, at *5-7 (treating 2% difference in losses "as roughly equal" and appointing movant with lower losses as lead plaintiff because, inter alia, the other *Olsen/Lax* factors favored that movant); *City of Hollywood*, 2017 U.S. Dist. LEXIS 199868, at *9 (appointing movant with lower losses because "the Court finds that the difference in the approximate losses does not overcome the combined weight of the first three factors"); *Doral*, 414 F. Supp. 2d at 403 (holding that a 17% difference in losses was "roughly equal" and appointing movant with lower losses based on other considerations).

Newman respectfully submits that the ongoing dispute between Boulware and Lou as to the appropriate methodology to use for calculating the competing movants' losses only illustrates the extent to which loss is a highly manipulable financial metric and militates in favor of evaluating the competing movants' financial interest holistically, with reference to the three most objective *Olsen*/*Lax* factors (shares purchased, funds expended, and shares retained), none of which is the subject of any dispute.

**B.    Competing Approaches to Calculating the Competing Movants' Approximate Losses**

**1.    The Traditional Last-in-First-Out Approximate Loss Approach**

**a.    Boulware's Position**

As reflected in the table below, Boulware has the largest financial interest compared to those of the competing movants when measured under the traditional LIFO approximate loss approach, using November 15, 2022 as the first day of the 90-day lookback period.

| Movant | Approximate Loss (LIFO) With Lookback Beginning on 11/15/22 |
|---|---|
| David Boulware | $46,289.89 |
| Lawrence Lou | $44,525.00 |
| George Newman | $43,265.00 |
| Timothy R. Kane | $37,569.52 |

Significantly, even if the Court were to adopt Kane's position and use November 14, 2022 as the first day of the 90-day lookback period, Boulware would still maintain the largest traditional LIFO approximate loss.

| Movant | Approximate Loss (LIFO) With Lookback Beginning on 11/14/22 |
|---|---|
| David Boulware | $46,210.00 |
| Lawrence Lou | $44,525.00 |
| George Newman | $41,492.12 |
| Timothy R. Kane | $37,569.52 |

### b.     Newman's Position

Under this approach, Newman acknowledges that Boulware would have the largest financial interest. However, as set forth *supra*, Newman disagrees that the Court should assess financial interest solely with reference to loss, calculated under any methodology.

### c.     Lou's Position

The "traditional" LIFO approach advanced by Boulware does not comply with the PSLRA nor caselaw because it credits losses that are not compensable (here, sold before any corrective disclosure). *See e.g., Dura*. As stated throughout this response, *any* method which does not comport to the claims of the case is useless.

### d.     Kane's Position

Movant Kane's motion should be granted, and all competing motions denied, because Kane is the only movant whose motion is not facially defective for failure to comply with the plain language of the PSLRA. The difference between Kane's estimated loss and Boulware's (the movant with the highest purported loss) is only $8,720.37. With similar losses, Kane and the other lead plaintiff movants have the same incentive to maximize the recovery for themselves and the class under the PSLRA. However, while the other lead plaintiff movants claim losses, when calculated correctly, may be nominally larger than Kane's, all other movants, including Boulware, suffer from disqualifying deficiencies that render their motions moot and warrant the appointment of Mr. Kane. *See infra*, Section IV.

Each of the lead plaintiff movants' loss calculations are defective because the movants failed to comply with the clear-cut, bright-line language of the PSLRA, when they calculated their losses. Movant Kane's motion is the only motion that is not facially defective and should, therefore, be granted. The PSLRA is clear, and it is well established that, for purposes of determining the financial interest of a lead plaintiff movant for securities the movant continues to possess:

JOINT SUBMISSION RE: LEAD PLAINTIFF - 20
Case No.: 2:22-cv-08406-ODW-AGR
011147-11/2198742 V1

> the award of damages to the plaintiff shall not exceed the difference between the purchase or sale price paid or received, as appropriate, by the plaintiff for the subject securities and the mean trading price of that security during the 90-day period beginning on the date on which the information correcting the misstatement or omission that is the basis for the action is disseminated to the market.

15 U.S.C. § 78u-4(e)(1).

This District has determined the date to commence the 90-day lookback period begins on the day of the last disclosure. *See In re Wrap Technologies, Inc. Securities Exchange Act Litigation*, No. 20-cv-8760 (DMG) (PVC), 2021 WL 71433 at *2 (Jan. 1, 2021 C.D. Cal.) ("the PSLRA itself provides for a statutory cap on damages that is calculated based on the "difference between the purchase or sale price paid ... by the plaintiff for the subject security and the mean trading price of that security during the 90-day period beginning on the date on which [disclosure is made].") (citation omitted).

Kane objects to the submission by movants Boulware, Lou and Newman regarding the calculation of the 90-day lookback period to the extent that it purports to include new evidence or evidence not submitted in their motions for appointment as lead plaintiff. *See* Section II.A.2.a, *supra*. The movants' submission is not consistent with this Court's Order to File Joint Submission re: PSLRA Lead Plaintiff because movants' submission cites additional evidence not contained in the record or in movants' motions for appointment as lead plaintiff. The Court ordered that "Bird and Arias <u>only</u> may submit additional declarations or other evidence with the Joint Submission. All Movants should cite to the evidence they submitted with their respective Motions." *See* ECF No. 47, at 2 (emphasis in original). After Kane circulated his position to competing movants regarding the proper calculation of the 90-day lookback period, movants Boulware, Lou and Newman's response purports to include new evidence, which Kane submits is unavailing, that was not contained in the record or movants' motions for appointment as lead plaintiff. Specifically, neither the

JOINT SUBMISSION RE: LEAD PLAINTIFF - 21
Case No.: 2:22-cv-08406-ODW-AGR
011147-11/2198742 V1

initial complaints in this consolidated action, nor the movants' respective motions, allege that the market reacted to an "earnings call" after the close of the market on November 14, 2022. Further, the complaints and the movants' motions do not allege that the information from the November 14, 2022 disclosure was "digested by the market" on November 15, 2022. Accordingly, the inclusion of such evidence should not be considered by the Court. Notwithstanding the foregoing, the additional evidence is unavailing because it is inconsistent with the allegations of the complaints at issue, as discussed more fully above (*see* Section I.B.2., *supra*) and below.

Apart from Kane, each of competing lead plaintiff movants failed to start the 90-day lookback period on the date on which the disclosure was made – *i.e.*, November 14, 2022. Rather, the movants started the 90-day look back period on the first day after the disclosure was made - November 15, 2022. *See* Boulware loss analysis ("90-Day Mean Share Price **after last Day** of [Class Period]") ECF No. 24-2 (emphasis added); Lou loss calculation reflecting incorrect "Lookback Price" ECF No. 16-3; and Neuman loss calculation ("Avg Closing Prices **from November 15, 2022** to January 13, 2023") ECF No. 28-1 (emphasis added).

Kane was the only movant with a pending motion that used the correct date to start the 90-day look back period, as required by the PSLRA, and went even further to identify when the 90-day lookback period would end, which none of the other movants addressed. *See* ECF No. 13-5 ("The average closing prices from November 14, 2022 through January 17, 2023. The 90-Day lookback period will end on February 10, 2023."). Because all other movants failed to correctly apply the 90-day look back period their motions are facially defective and their purported loss calculations per se incorrect. It is irrelevant that the competing movants' losses may be higher than Kane's when and if calculated correctly. Movants are bound to apply the statutory requirements of the PSLRA correctly and to stand on their motions. It is axiomatic that investors who request to be appointed lead plaintiff understand and comply with the plain language of the PSLRA. Mr. Kane is the only movant who accurately applied the

plain language of the PSLRA. The competing lead plaintiff movants' failure to comply with the plain language of the PSLRA calls into question their ability to adequately lead this complex class action pursuant to the PSLRA and warrants denial of their motions.

### 2. *Dura*-Adjusted LIFO Loss Method

#### a. Boulware's Position

As reflected in the table below, Boulware has the largest financial interest compared to those of the competing movants when measured under the *Dura*-adjusted LIFO loss method.

| Movant | Approximate Loss (LIFO) |
|---|---|
| David Boulware | $53,459.89 |
| Lawrence Lou | $44,525.00 |
| George Newman | $43,265.00 |
| Timothy R. Kane | $37,569.52 |
| Glen Dworkin | $19,858.52 |

#### b. Newman's Position

Under the this approach, Newman acknowledges that Boulware would have the largest financial interest. However, as set forth *supra*, Newman disagrees that the Court should assess financial interest solely with reference to loss, calculated under any methodology.

#### c. Lou's Position

LIFO calculations can inflate losses—as they do here. As noted above, a FIFO method is a stronger approach—used in PSLRA cases including for settlements and by the Internal Revenue Service. *See supra.* Section II.C.

### 3. *Dura*-Adjusted FIFO Loss Method

#### a. Lou's and Boulware's Position

Under Lou's approach, Lou has the largest financial interest at $44,525, followed by David Boulware with an actual financial interest of $43,818 in this case

(by excluding his intra-Class Period loss of $2,485, from his November 1, 2021 purchase of 1,000 shares at $10.44 and the connected sell of those shares on November 2, 2021 and December 1, 2021 at $8.91 and $7.00, which is unconnected from the claims in the case), and then movants with smaller financial interests such as George Newman, and Timothy Kane. *See* Dkt. No. 24-2.

### b.    Newman's Position

Under this approach, Newman acknowledges that Lou would have the largest financial interest. However, as set forth *supra*, Newman disagrees that the Court should assess financial interest solely with reference to loss, calculated under any methodology.

### IV.    REBUTTAL EVIDENCE (15 U.S.C. § 78U-4(A)(3)(B)(III)(II))

### A.    Kane's Position

The motions of movants Boulware, Lou and Newman should be denied because each failed to provide requisite information necessary for the Court to meaningfully gauge their financial and legal sophistication and assess their adequacy to lead the putative class. The failure to make such a showing is particularly salient given the failure to correctly apply the 90-day look back as required by the PSLRA.

The PSLRA provides that the "most adequate plaintiff" – the plaintiff entitled to appointment as lead plaintiff – is the movant asserting the largest financial interest that ***also*** makes a *prima facie* showing of typicality and adequacy. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *In re Cavanaugh v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 306 F.3d 726, 729-30 (9th Cir. 2002). In assessing a movant's adequacy, the PSLRA mandates that "[i]f the plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *See In re Cavanaugh*, 306 F.3d 726, 729-32 (9th Cir. 2002).

"The PSLRA does not permit courts simply to presume that the movant with the largest financial interest in the relief sought by the class satisfies the typicality and adequacy requirements." *In re Snap Inc. Sec. Litig.*, No. 17-cv-03679 (SVW) (AGR), 2019 WL 2223800, at *1 (C.D. Cal. Apr. 1, 2019) (citation and quotation omitted). To the contrary, courts should exercise "independent judgment" to determine whether a movant's appointment advances the purpose of the PSLRA, which is "to ensure that 'securities class actions be managed by active, able class representatives who are informed and can demonstrate they are directing the litigation.'" *Garbowski v. Tokai Pharms., Inc.*, 302 F. Supp. 3d 441, 446-7 (D. Mass. 2018) (citation omitted). The lead plaintiff movants have not provided sufficient evidence establishing that they are the type of movants that the PSLRA envisioned. *See In re Network Assocs., Inc., Sec. Litig.,* 76 F. Supp. 2d 1017, 1047 (N.D. Cal. 1999) (The intent of the PSLRA was "to curb the use of . . . figurehead plaintiffs who would serve the interests of plaintiffs' lawyers, not the class.").

District courts around the country, including this District, require movants to provide sufficient information concerning who they are to enable courts to determine that the movant possesses a baseline level of financial and legal sophistication sufficient to allow them to be an effective fiduciary to the entire class of investors. *See In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002) (denying a lead plaintiff motion because "[i]n short, the [movants] provide no briefing and proffer no declarations concerning their ability to act as lead plaintiffs."); *see also Camp v. Qualcomm Inc.*, Case No. 18-cv-1208 (AJB) (BLM), 2019 WL 277360, at *2-*3 (S.D. Cal. Jan. 22, 2019) (finding that it was "difficult to determine whether [a movant] would indeed be a typical plaintiff for the class" when that movant "failed to include any basic details about himself, including where he lives or who he is").

Lead plaintiff movants Boulware, Lou and Newman do not provide requisite information with which the Court could in any meaningful way gauge their financial and legal sophistication, much less conclude that they are adequate to lead the putative

JOINT SUBMISSION RE: LEAD PLAINTIFF - 25
Case No.: 2:22-cv-08406-ODW-AGR
011147-11/2198742 V1

class. The Court has been provided no evidence about movant Boulware other than he is "a medical doctor and researcher in Minneapolis, Minnesota." *See* ECF No. 21, at 2, 9. Boulware fails to demonstrate his adequacy under Rule 23 as he fails to put forth any information about his educational background or investing experience. *See Perez v. HEXO Corp.*, No. 19-cv-10965 (NRB), 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020). Further, there is no evidence in Boulware's motion, or his supporting documents, that addresses whether Boulware is willing and able to vigorously represent the class or manage his selection of lead counsel. *See Garbowski*, 302 F. Supp. 3d at 449 ("the memorandum did not address whether [the movant] was willing and able 'to represent the claims of the class vigorously,' including by managing the litigation and the lawyers."). Finally, Boulware provides no information regarding how or why he selected his counsel or what considerations went into his decision to select his counsel. *See In re Lucent Techs. Inc. Sec. Litig.*, 221 F. Supp. 2d 472, 489 (D. N.J. 2001).

Lou likewise does not provide requisite information with which the Court could gauge his financial and legal sophistication, much less conclude that Lou is adequate to serve as a lead plaintiff. The Court has been provided no evidence about movant Lou other than he is radiologist from Canada and has been "investing in the stock market for about five years." *See* ECF No. 15, at 9. The Court has been provided no evidence about Lou in his motion, or supporting documents, concerning his educational background or whether Lou is willing and able to vigorously represent the class, or how or why he selected his counsel or what considerations went into his decision to select his counsel.

Unlike movants Boulware and Lou, Newman submitted a declaration in support of his lead plaintiff motion. *See* ECF No. 28-4. The declaration provides education and employment information for Newman and represents that he has "been investing in the securities markets for 5 years." *Id*. at 1. However, Newman represents that he participated in one call with his proposed lead counsel to discuss the action. *See id*. at

2 ("I held a call with an attorney from Pomerantz to discuss this litigation."). There is no indication of whether he knew of other law firms or how he came to the decision to have his counsel represent his interests.

Further, the Certifications of Boulware, Lou and Newman in support of their lead plaintiff motions are defective because they appear to be executed via standard, boilerplate, online forms that contain language authorizing their counsel to file a complaint. To be clear, no complaints have been filed by any of the lead plaintiff movants. Courts have expressed uncertainties about lead plaintiff movants with similar facts. *See Camp v. Qualcomm Inc.*, 2019 WL 277360, at *3 ("Looking at [movant]'s 'Certification . . .' [movant] did sign under penalty of perjury that he 'reviewed the complaint and authorized its filing,' however, there was indeed no filing made on behalf of [movant]."); *see also Garbowski*, 302 F. Supp. 3d at 455 ("[Movant]'s willingness to make false statements under oath contributes to the court's conclusion that he would not have been an adequate lead plaintiff.").

Boulware's Certification appears to be a standard, boilerplate certification pertaining to "[t]he individual or institution listed below" that was completed through his counsel's website. *See* ECF No. 24-1. There is no reference in Boulware's Certification to the defendant, Bird Global, Inc. f/k/a Switchback II Corporation. Additionally, the signature line of the Certification indicates that it is the "Signature of Representative Plaintiff and **Authorization to File a Complaint**." *See id.* (emphasis added). In a similar situation, the court in *Garbowski* expressed "concerns" over a movant's adequacy where the movant, *inter alia*, filed a certification that—similarly to Boulware's certification—claimed to authorize the "the filing of a complaint" when no complaint had been filed in the movant's name. *See Garbowski*, 302 F. Supp. 3d at 455. There, the court exercised its "independent judgment" to ensure a movant's adequacy and stated that such an "obviously incorrect" representation "heighten[ed] the court's concerns" that such a movant "would not have represented the putative class in the manner required by the PSLRA." *Id.*

Similar to Boulware's Certification, Lou's Certification appears to be a standard, boilerplate certification pertaining to "[t]he individual or institution listed below (the 'Plaintiff')" that was completed through his counsel's website. *See* ECF No. 16-2. There is no reference in Lou's Certification that he is making a motion for appointment as lead plaintiff. Rather, his Certification represents that Lou, "retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief[.]" *See id*. Based upon the information before the Court, there is no indication that Lou was even aware that a motion for appointment as lead plaintiff would be filed on his behalf when he executed the Certification – three days after the initial complaint was filed.

Newman's Certification, similar to Boulware and Lou's Certifications, appears to be a boilerplate certification completed through his counsel's website. Newman's Certification represents that it is a "declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 (the 'Securities Act') and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 (the 'Exchange Act') as amended by the Private Securities Litigation Reform Act of 1995." *See* ECF No. 28-3. Notably, neither complaint filed in this consolidated action includes claims against any defendant for violations of the Securities Act. Further, Newman's Certification declares that he "reviewed a Complaint against Bird Global, Inc. . . . and authorize[s] the filing of a comparable complaint." *See id*. Again, there is no indication that Newman was aware that a motion for appointment as lead plaintiff would be filed on his behalf when he executed his Certification. "[T]hese errors, when considered together, show [movants'] mistakes disqualify [them] at the third step from lead plaintiff." *Camp v. Qualcomm Inc.*, 2019 WL 3554798, at *2.

By contrast, Kane is the only movant who meets all the necessary elements for appointment as Lead Plaintiff under the PSLRA and correctly calculated his losses pursuant to the PSLRA. *See* 15 U.S.C. § 78u4(a)(3)(B)(iii)(I). With losses of approximately $37,570 in connection with his class period transactions in Bird Global

securities, Kane possesses the largest financial interest of any movant who correctly calculated its losses and who is capable of satisfying the adequacy and typicality requirements of Rule 23. Unlike the other lead plaintiff movants, Kane is perfectly situated to represent all class members. Kane provided information regarding his education, current employment and that he has been investing in the stock market for about 14 years. *See* Kane Declaration (ECF No. 13-6) at 1. Further, Kane stated in his Declaration that he understands "the responsibilities and obligations of serving as lead plaintiff pursuant to the [PSLRA], which include acting as a fiduciary for all class members, staying informed about this litigation, and selecting and overseeing lead counsel." *Id*. Kane represented that he is "willing to serve in a lead plaintiff capacity on behalf of the other Bird Global investors harmed by defendants' alleged misconduct." *Id*. Kane also stated that he is "willing to oversee the vigorous prosecution of this litigation in order to maximize the recovery for the class." *Id*.

Kane demonstrated his decision to select Berger Montague PC as his counsel, stating that he "understand[s] that, as lead plaintiff, it is [his] responsibility to select counsel for the class." *Id*. at 2. Kane represented that he had "multiple discussions with attorneys from Berger Montague, via telephone and email" (*Id*. at 1), and that he "took this responsibility extremely seriously." *Id*. at 2. Further, Kane demonstrated his willingness to direct his selected law firm by "instruct[ing] counsel to conduct the litigation in an efficient manner, and to provide regular updates as frequently as necessary." *Id*.

Kane has demonstrated both his ability and willingness to serve in a fiduciary position of trust to absent class members. There is no proof before the Court undermining Kane's adequacy and typicality. As such, Kane is the best possible lead plaintiff movant to lead this litigation. Additionally, Kane has selected Berger Montague PC as Lead Counsel. Berger Montague PC is a nationally recognized securities class action litigation firm that has recovered billions of dollars in damages for injured shareholders.

**B.     Lou's Position**

Lou has the largest financial interest in the case and made a *prima facie* showing of his adequacy and typicality. Dkt. Nos. 15 and 16-2. *Cavanaugh*, 306 F.3d at 730 ("the presumptive lead plaintiff [is] the one who "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.") (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)). As such, the Court need not review the competing motions. *Cavanaugh*, 306 F.3d at 732 ("The statutory process is sequential: The court must examine potential lead plaintiffs one at a time, starting with the one who has the greatest financial interest, and continuing in descending order if and only if the presumptive lead plaintiff is found inadequate or atypical.").

## V.     OTHER RELEVANT MATTER

**A.     Boulware's Position**

The presumption that Boulware is the "most adequate plaintiff" may only be rebutted by proof that he is subject to unique defenses or will not adequately and fairly represent the class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Kane, the only Movant to challenge Boulware's adequacy and typicality, has failed to provide such proof.

***First***, Kane argues that Boulware is an atypical and inadequate plaintiff because he purportedly disregarded the PSLRA's statutory limitation on damages' provision by beginning the 90-day lookback period on November 15, 2022, as opposed to November 14, 2022. But as noted above, Kane's argument effectively ignores the corrective information disclosed after close of market on November 14, 2022 and excludes purchases made on November 14, 2022 from the class period, which is contrary to the allegations in each complaints. *Ideanomics*, 2020 WL 7389027, at *3, n. 7 (rejecting challenge based on movant's purported use of wrong start day for 90 day lookback period). In any case, Kane cites to no authorities – because none exists – holding that an erroneous application of the PSLRA's statutory limitation on damages' provision somehow renders an applicant atypical or inadequate.

JOINT SUBMISSION RE: LEAD PLAINTIFF - 30
Case No.: 2:22-cv-08406-ODW-AGR
011147-11/2198742 V1

***Second***, Kane contends that Boulware has not provided sufficient information about his background and experience. But courts regularly reject the notion that detailed background information is required by a lead plaintiff movant to show that the movant is adequate or typical. *See, Patel v. Reata Pharms., Inc.*, 549 F. Supp. 3d 559, 570 (E.D. Tex. 2021); *Kasilingam v. Tilray, Inc.*, 2020 WL 4530357, at *3 (S.D.N.Y. Aug. 6, 2020); *Borteanu v. Nikola Corp.*, 507 F. Supp. 3d 1128, 1138–39 (D. Ariz. 2020). Moreover, unlike the cases cited by Kane,[4] Boulware did provide basic background information about himself. Boulware repeatedly indicated that he is a medical doctor and researcher in Minneapolis, Minnesota. ECF No. 21 at 1, 9. A simple internet search of these terms brings up Boulware's education and work experience.[5] Tellingly, neither Kane nor any competing applicant has not uncovered any fact bearing on Boulware's inadequacy – because there is none.

***Third***, Kane erroneously claims Boulware's PSLRA certification is defective because it is purportedly a boilerplate online form. But Boulware's certification tracks the format expressly approved by Congress. 15 U.S. Code § 78u–4(a)(2)(A). And contrary to Kane's suggestion, Boulware's certification does not reflect an understanding to be filing a complaint. Boulware's certification expressly notes that he has "authorized the filing of a motion for appointment as lead plaintiff", and is "willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary." ECF No. 24-1 at ¶¶ 1, 3. Further, the certification indicates it was executed electronically by Boulware through DocuSign, not an online form. ECF No. 24-1. Finally, Boulware provides the background and

---

[4] For example, in *Camp*, the court declined to appoint a lead-plaintiff movant for failing to "include any basic details about himself, including where he lives or who he is specifically in his motion." 2019 WL 277360, at *3. Similarly, in *Perez*, the court opted not to appoint a lead-plaintiff movant who did not provide any information about himself, *e.g.*, "investment history, educational background, etc." 2020 WL 905753, at *3.

[5] *See*, *e.g.*, https://med.umn.edu/bio/david-boulware.

JOINT SUBMISSION RE: LEAD PLAINTIFF - 31
Case No.: 2:22-cv-08406-ODW-AGR
011147-11/2198742 V1

experience of his retained counsel demonstrating the reasonableness of his selection of counsel.

**B.      Lou's Position**

**1.      Lou's Background Information Not Required But Provided**

To the extent that any movant may argue, erroneously, that individual lead plaintiff movants must provide background information, there is no issue.

First, the PSLRA does not require background information for individual lead plaintiff movants. 15 U.S.C. § 78u-4(a)(2)(A);  *Kaslingam v. Tilray*, 2020 WL 4530357, at * 3 (S.D.N.Y. Aug. 6, 2020) (rejecting argument that background information is required to make a preliminary showing of adequacy and typicality); *Borteanu v. Nikola Corp.*, 507 F. Supp. 3d 1128, 1138 (D. Ariz. 2020), *abrogated on other grounds In re Mersho*, 6 F.4th 891 (9th Cir. 2021) (same); *Cavanaugh*, 306 F.3d at 732 ("a straightforward application of the statutory scheme … provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case. Once that comparison is made ... further inquiry must focus on that plaintiff alone and be limited to determining whether [s]he satisfies the other statutory requirements."); *see also Veal v. LendingClub Corp.*, 2018 WL 5879645, at *4 (N.D. Cal. Nov. 7, 2018) ("'When the court makes [this] initial determination, it must rely on the ... complaint and sworn certification; there is no adversary process to test the substance of those claims.' [] As such, [Lou] need only make a prima facie showing that [he] satisfies the Rule 23 requirements of typicality and adequacy." (*quoting In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002))); *In re Wrap Techs., Inc. Sec. Exch. Act Litig.*, 2021 WL 71433, at *3 (C.D. Cal. Jan. 7, 2021) (adequacy found from a PSLRA certification); *Waterford Twp. Police v. Mattel, Inc.*, 2017 WL 10667732, at *6 (C.D. Cal. Sept. 29, 2017) (typicality found from a "sparse" PSLRA certification).

Second, Lou provided ample background information about himself in his opening brief. Dkt. No. 15 at 9. Lou is a sophisticated investor with about five years of investing experience. *Id*. He is a resident of Canada and a radiologist. *Id*. Along with

JOINT SUBMISSION RE: LEAD PLAINTIFF - 32
Case No.: 2:22-cv-08406-ODW-AGR
011147-11/2198742 V1

his trading information (16-2 at 2), loss calculation (16-3), and the information required to be in his certification (16-2), Lou is not even clear what other pieces of information fellow class members (like Kane) or the Court could want—and why. *Compare* Dkt. No. 15 at 9 (providing that Lou has "about five years" of investing experience, that he is a "radiologist" meaning he holds a medical degree, and that he "resides in Canada") *with* Dkt. No. 13-6 (providing that Kane holds a bachelor's degree, is a project manager, and has 14 years of investing experience with *no* indication of residence or citizenship).

Indeed, at the movants' meet-and-confer, while another movant raised a vague issue with others' provided background information, no specific information was sought even when Lou's counsel asked for clarification and to ease any concerns. It is clear there are no actual concerns, in law or otherwise. It may also be the case that others movants failed to read Lou's opening brief.

Finally, simply Googling "Lawrence Lou" "radiologist" and "Canada" brings up the one and only person who fits that description. *See* Dkt. No. 15 at 9.

Simply put, he is a known sophisticated medical doctor with years of investing experience. *Id.* There is no doubt that he will be willing and able to monitor counsel. *See* Dkt. Nos. 15 at 6-7 and 16-2.

### 2. Lou's Certification is PSLRA-Compliant

Lou's certification is boilerplate, like *all* PSLRA certifications, because the PSLRA itself provides the requirements for a proper certification. 15 U.S.C. § 78u-4(a)(2)(A)(i)-(iv). Lou's certification complies with these requirements. *See* Dkt. No. 16-2. Interestingly, Kane's certification is almost identical to Lou's. *Compare* Dkt. No. 16-2 *with* Dkt. No. 13-3; *see also* Dkt. Nos. 22-2, 24-1, 28-3. Indeed, no issue with Lou's certification was mentioned at the meet-and-confer.

### C. Newman's Position

Newman respectfully submits that Kane's attacks on his adequacy lack merit.

Kane argues that Newman is unfit to serve as Lead Plaintiff because of purported "errors" in his Certification, which Kane describes as "boilerplate." Specifically, Kane cites the appearance of the phrase "Exchange Act and/or Securities Act" in the Certification, as well as the fact that the Certification authorizes the filing of a Complaint, rather than a Lead Plaintiff motion, on Newman's behalf. Yet Newman's Certification includes a refence to the Securities Act merely for the avoidance of any doubt in the event that a subsequent Complaint filed on behalf of the Class in this litigation were to include Securities Act claims. Likewise, the PSLRA's Certification provisions require the inclusion of language "stat[ing] that the plaintiff has reviewed the complaint and authorized its filing". 15 U.S.C. § 78u-4(a)(2)(A)(i). Accordingly, Newman followed the statutory directive and duly authorized the filing of a Complaint on his behalf. Rather than file the Complaint that he authorized, Newman instead opted to seek appointment as Lead Plaintiff—and as the attestations in the Declaration filed in support of his motion make clear, he "approved the filing of a motion on [his] behalf seeking appointment as Lead Plaintiff."  Dkt. No. 28-4 ¶ 2. There is simply nothing in the record to support Kane's suggestion that Newman was unaware of or did not authorize his Lead Plaintiff motion.

DATED: April 5, 2023    Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By *s/ Lucas E. Gilmore*
    LUCAS E. GILMORE
Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
715 Hearst Avenue, Suite 300
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
Email:   lucasg@hbsslaw.com
       reed@hbsslaw.com

*Attorneys for [Proposed] Lead Plaintiff*
*David Boulware*

DATED: April 5, 2023           POMERANTZ LLP


                               *s/ Jennifer Pafiti*
                               JENNIFER PAFITI
                               Jennifer Pafiti (SBN 282790)
                               1100 Glendon Avenue, 15th Floor
                               Los Angeles, CA 90024
                               Telephone: (310) 405-7190
                               Email:   jpafiti@pomlaw.com


                               *Attorneys for [Proposed] Lead Plaintiff*
                               *George Newman*

DATED: April 5, 2023           BERGER MONTAGUE PC


                               *s/ Sohpia M. Rios*
                               SOPHIA M. RIOS
                               Sophia M. Rios (SBN 305801)
                               401 B Street, Suite 2000
                               San Diego, CA 92101
                               Telephone: (619) 489-0300
                               Email:   srios@bm.net


                               *Attorneys for [Proposed] Lead Plaintiff*
                               *Timothy R. Kane*

DATED: April 5, 2023           THE ROSEN LAW FIRM, P.A.


                               *s/ Laurence M. Rosen*
                               LAURENCE M. ROSEN
                               Laurence M. Rosen, Esq. (SBN 219683)
                               355 South Grand Avenue, Suite 2450
                               Los Angeles, CA 90071
                               Telephone: (213) 785-2610
                               Facsimile:  (213) 226-4684
                               Email:   lrosen@rosenlegal.com


                               *Attorneys for [Proposed] Lead Plaintiff*
                               *Lawrence Lou*

JOINT SUBMISSION RE: LEAD PLAINTIFF - 35
Case No.: 2:22-cv-08406-ODW-AGR
011147-11/2198742 V1

## ECF CERTFICATION

Pursuant to L.R. 5-4.3.4(a)(2)(i), the filer attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content, and have authorized the filing.

DATED:  April 5, 2023          HAGENS BERMAN SOBOL SHAPIRO LLP

By:   */s/ Lucas E. Gilmore*
    LUCAS E. GILMORE
    Reed R. Kathrein (139304)
    Lucas E. Gilmore (250893)
    715 Hearst Avenue, Suite 300
    Berkeley, CA  94710
    Telephone: (510) 725-3000
    Facsimile:  (510) 725-3001
    Email:     lucasg@hbsslaw.com
            reed@hbsslaw.com

JOINT SUBMISSION RE: LEAD PLAINTIFF - 36
Case No.: 2:22-cv-08406-ODW-AGR
011147-11/2198742 V1