Reed R. Kathrein (139304)
Lucas E. Gilmore (250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
reed@hbsslaw.com
lucasg@hbsslaw.com

*Lead Counsel and Counsel for*
*Lead Plaintiff David Boulware*

*[Additional counsel on signature page]*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| DAVID BOULWARE and LAWRENCE LOU, individually and on behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br> v.<br><br>BIRD GLOBAL, INC., TRAVIS VANDERZANDEN, YIBO LING, JIM MUTRIE, and SCOTT MCNEILL,<br><br>      Defendants. | Lead Case No. 2:22-cv-08406-ODW (AGRx)<br><br>**LEAD PLAINTIFF DAVID BOULWARE'S NOTICE OF MOTION AND MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   February 26, 2024<br>Time:   1:30 p.m.<br>Courtroom: 5D, 5th Floor<br>Judge:   Hon. Otis D. Wright II<br><br>Trial Date: Not Set<br>Date Action Filed: November 17, 2022 |

No. 2:22-cv-08406-ODW (AGRX)
MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT
011147-11/2417834 V1

**TO THE COURT AND ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on February 26, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 5D, 5th Floor of the First Street Courthouse, 350 West 1st Street, Los Angeles, California 90012, before the Honorable Otis D. Wright II, Lead Plaintiff David Boulware will and hereby does move the Court for an order, pursuant to Federal Rule of Civil Procedure 15, granting leave for Lead Plaintiff to file the [Proposed] Second Amended Complaint.

This motion is based on this Notice of Motion and Motion, the memorandum of points and authorities in support, the declaration of Lucas E. Gilmore in support, the pleadings and records on file in this action, and any other written or oral argument or other matter that may be presented to the Court and that the Court may consider in deciding this motion.

This Motion is made following a telephonic conference of counsel pursuant to Local Rule 7-3, which took place on November 15, 2023.

DATED: December 18, 2023   Respectfully submitted,

*/s/ Lucas E. Gilmore*
Lucas E. Gilmore (250893)
Reed R. Kathrein (139304)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
lucasg@hbsslaw.com
reed@hbsslaw.com

Nathan Emmons (*pro hac vice* forthcoming)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
nathane@hbsslaw.com

*Lead Counsel and Counsel for*
*Lead Plaintiff David Boulware*

-i-   No. 2:22-cv-08406-ODW (AGRX)

MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT

Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
**THE ROSEN LAW FIRM, P.A.**
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
lrosen@rosenlegal.com

Jonathan Stern (*pro hac vice* forthcoming)
**THE ROSEN LAW FIRM, P.A.**
275 Madison Ave., 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
jstern@rosenlegal.com

*Counsel for Additional Plaintiff
Lawrence Lou*

-ii-                    No. 2:22-cv-08406-ODW (AGRX)

MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT

011147-11/2417834 V1

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................ 1

II.    SUMMARY OF THE CAC, MTD, AND SAC ............................................... 3

III.   ARGUMENT ................................................................................................. 6

       A.    Under Rule 15(a)'s Lenient Standard and Because Justice
             so Requires, the Court Should Grant Plaintiffs Leave to
             file the SAC ....................................................................................... 6

       B.    The Proposed Amendments Are Not Futile .......................................... 7

             1.    The SAC Asserts Viable Proxy Claims ..................................... 7

             2.    The SAC Asserts Actionable New Statements
                   Made by Defendants Mutrie and McNeill ............................... 10

             3.    The SAC Includes New Scienter Facts .................................... 11

       C.    There Is No Undue Delay ................................................................. 11

       D.    Plaintiffs Did Not Engage in Bad Faith or Have a Dilatory
             Motive .............................................................................................. 12

       E.    Defendants will not be prejudiced by the amendment ........................ 14

IV.    CONCLUSION .............................................................................................. 15

MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT

011147-11/2417834 V1

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re AMBAC Fin. Grp., Inc. Deriv. Litig.*,
  2008 WL 5262428 (S.D.N.Y. Dec. 11, 2008)......................................................15

*Baker v. Twitter, Inc.*,
  2023 WL 6932568 (C.D. Cal. Aug. 25, 2023) ....................................................12

*Bodri v. GoPro, Inc.*,
  2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ....................................................12

*Bowles v. Reade*,
  198 F.3d 752 (9th Cir. 1999)...............................................................................12

*DCD Programs, Ltd. v. Leighton*,
  833 F.2d 183 (9th Cir. 1987)..........................................................................6, 14

*Defazio v. Hollister, Inc.*,
  2008 WL 2825045 (E.D. Cal. July 21, 2008) ......................................................7

*De Luca v. City of Hueneme*,
  2014 WL 7186983 (C.D. Cal. Dec. 17, 2014) ......................................................6

*Dep't of Fair Emp. & Hous. v. L. Sch. Admission Council, Inc.*
  2013 WL 485830 (N.D. Cal. Feb. 6, 2013)........................................................14

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003)............................................................................13

*Film Allman, LLC v. N.Y. Marine & Gen. Ins. Co.*,
  2015 WL 4093536 (C.D. Cal. July 7, 2015) ........................................................6

*Foman v. Davis*,
  371 U.S. 178 (1962) .............................................................................................6

*In re Glob. Crossing, Ltd. Sec. Litig.*,
  313 F. Supp. 2d 189 (S.D.N.Y. 2003).................................................................12

*Hevesi v. Citigroup Inc.*,
  366 F.3d 70 (2d Cir. 2004) .................................................................................13

-ii-                No. 2:22-cv-08406-ODW (AGRX)

MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT

011147-11/2417834 V1

*In re Hot Topic Sec. Litig.*,
   2014 WL 7499375 (C.D. Cal. May 2, 2014)..........................................................9

*Knappenberger v. City of Phoenix*,
   566 F.3d 936 (9th Cir. 2009)...............................................................................7

*Morongo Band of Mission Indians v. Rose*,
   893 F.2d 1074 (9th Cir. 1990)...........................................................................14

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962 (9th Cir. 2009)...............................................................................6

*Nejo v. Wilshire Credit Corp.*,
   2010 WL 2888905 (S.D. Cal. July 21, 2010).....................................................15

*N.Y.C. Emps.' Ret. Sys. v. Jobs*,
   593 F.3d 1018 (9th Cir. 2010).............................................................................7

*In re Portal Software, Inc. Sec. Litig.*,
   2005 WL 8179740 (N.D. Cal. Mar. 9, 2005)...................................................2, 13

*Rudolph v. UTStarcom*,
   560 F. Supp. 2d 880 (N.D. Cal. 2008)..............................................................1, 7

*Skiadas v. Acer Therapeutics Inc.*,
   2020 WL 3268495 (S.D.N.Y. June 16, 2020)....................................................11

*In re Twitter Inc. Sec. Litig.*,
   326 F.R.D. 619 (N.D. Cal. 2018) ......................................................................13

*Venugopal v. Citibank, NA*,
   2013 WL 174483 (N.D. Cal. Jan. 16, 2013) ........................................................2

*Von Pappenheim v. Portland Boxing & Wrestling Co.*,
   442 F.2d 1047 (9th Cir. 1971)...........................................................................14

*Wash. Sch. Risk Mgmt. Pool v. Am. Re-Ins. Co.*,
   2023 WL 5036075 (W.D. Wash. Aug. 8, 2023) .................................................14

*Wixon v. Wyndham Resort Dev. Corp.*,
   2007 WL 3101331 (N.D. Cal. Oct. 22, 2007).....................................................12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 15(a)(2).............................................................................1, 6

MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT

011147-11/2417834 V1

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs' proposed amendment is well-justified under the liberal regime established by Federal Rule 15, which states that courts should "freely give leave [to amend] when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). The [Proposed] Second Amended Complaint ("SAC") also addresses purported pleading deficiencies Defendants identified in their Motion to Dismiss (ECF No. 72) ("MTD"), while remaining well-grounded in Lead Plaintiff's central theory of wrongdoing: Defendants' false reporting of Bird's historical financial performance as a result of improper revenue recognition practices, which erased over $59 million in shareholder value when it came to light through a series of partial disclosures.

***The Amendment Is Not Futile***. The proposed amendment is not futile because the SAC states valid claims for violations of the federal securities laws, including by adding a new plaintiff, claims, and facts to remedy purported pleading deficiencies that Defendants noted in their MTD. In broad strokes, the amendment has three main components.

***First***, the SAC adds new claims under Sections 14(a) and Section 20(a) of the Exchange Act ("Proxy Claims"), as well as an additional named plaintiff with individual standing to pursue such claims, class member Christos Givas, for Defendants' issuance of false and misleading statements and omissions in the proxy statement and other materials soliciting Switchback II Corp. ("Switchback") shareholders' approval of Switchback's proposed business combination with Bird Rides, Inc. (the "Merger"). In their MTD, Defendants principally challenged Plaintiffs' Section 10(b) claims on the grounds that Plaintiffs failed to allege a strong inference of Defendants' scienter. MTD at 19–29. Significantly, Defendants cannot raise such a defense to Plaintiffs' Proxy Claims. This is because "[t]he requisite state of mind under [Section 14(a)] is negligence." *Rudolph v. UTStarcom*, 560 F. Supp. 2d 880, 887 (N.D. Cal. 2008).

-1-                    No. 2:22-cv-08406-ODW (AGRX)

*Second*, the SAC includes new false and misleading statements made by Defendants leading up to the closing of the Merger, including statements made personally by Defendants McNeill and Mutrie, both of whom Defendants argued in the MTD were not makers of allegedly false statements.

*Third*, the SAC provides additional allegations in support of Defendants VanderZanden's and Ling's scienter, specifically that the fact that Bird issued a "going concern" warning further supports scienter. SAC ¶¶ 125, 311, 315. Thus, the amendment should be permitted.

*The Amendment Is Timely*. While the Proxy Claims arise from the same conduct, transaction, and occurrence set out in the operative complaint, Plaintiffs did not have individual standing to assert these claims on behalf of the putative class given that they purchased their Bird shares after the record date for the Merger. Immediately after being retained by Plaintiff Givas, a class member with standing to assert such claims, Plaintiffs informed the Court and Defendants of their intent to amend. ECF No. 80. Then, after sharing the proposed SAC and conferring with Defendants to avoid motion practice, Plaintiffs promptly filed their motion for leave to amend in accordance with their representations to the Court and the stipulated briefing schedule. ECF Nos. 80, 83. No undue delay has occurred.

*There is No Bad Faith*. The proposed amendment is not made in bad faith. The addition of a named plaintiff with standing to bring additional claims under Section 14(a) of the Exchange Act is entirely appropriate. *See In re Portal Software, Inc. Sec. Litig.*, 2005 WL 8179740, at *2 (N.D. Cal. Mar. 9, 2005) (granting lead plaintiff leave to amend to add a named plaintiff with standing to assert Securities Act claims and agreeing that "the PSLRA does not in any way prohibit the addition of named plaintiffs to aid the lead plaintiff in representing a class"). And including additional alleged false statements and evidence in support of scienter are proper means of bolstering Plaintiffs' Section 10(b) claims. *See, e.g., Venugopal v. Citibank, NA*, 2013 WL 174483, at *3 (N.D. Cal. Jan. 16, 2013) (granting motion for leave to

MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT

011147-11/2417834 V1

amend during pendency of Defendants' motion to dismiss because the amendment served to add new factual allegations supporting complaint).

***There Is No Prejudice***. Plaintiffs have not previously amended ***their*** complaint,[1] and they have sought leave to amend early in the litigation when no case deadlines have been set and discovery has not commenced. Moreover, the proposed amendments assert the same central theory of misconduct over the same time period.

Accordingly, the Motion should be granted.

## II.    SUMMARY OF THE CAC, MTD, AND SAC

The Corrected Consolidated Amended Complaint ("CAC") (ECF No. 63) alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Bird Global, Inc. ("Bird") went public via merger with Switchback II Corporation ("Switchback"), a special purpose acquisition company, or "SPAC." CAC ¶ 2. In promoting the Merger to investors, Defendants repeatedly touted Bird's "compelling current revenues," which derived almost entirely from Sharing Revenue. *Id.* ¶¶ 2, 32, 56, 57. These claims were (ostensibly) supported by Bird's published financial statements, *Id.* ¶¶ 37, 55, 59, 64–71, as well as claims from Switchback's management, including Defendants Mutrie and McNeill, that the SPAC had conducted extensive due diligence to assure the accuracy of Bird's financial statements, including its "current revenues" and accounting practices, and other representations. *Id.* ¶¶ 4, 61, 72, 73, 74. Switchback investors approved the transaction on November 2, 2021, giving Defendants Mutrie and McNeill a 20% stake in the newly public company for only $25,000. *Id.* ¶¶ 4, 79, 282, 285.

Both before and after the Merger, Defendants made a variety of false and misleading statements to investors and the public. One category includes false and misleading financial figures. As a result of Bird's failure to perform the basic and fundamental determination of whether its Sharing Revenue was collectable, Bird

---

[1] The initial complaint (ECF No. 1) was filed plaintiff Mario Arias on November 17, 2022.

MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT
011147-11/2417834 V1

overstated its revenue by approximately $4.5 million in fiscal year 2020, $14 million in fiscal year 2021, $2.6 million in the first quarter of 2022, and $9.9 million in the second quarter of 2022, representing an overstatement of over 15.8% of its true Sharing Revenue for that quarter, generating the impression in its published financial disclosures that Bird had hit, or even exceeded, its guidance. *Id.* ¶¶ 6, 64–71, 80, 81, 84–94, 136–137, 141–142, 143–144, 148–149, 153–154, 156–159, 162–164, 166–167, 169–170, 171–172, 175–178, 184–186, 192–194, 201–203, 205–206, 207–209, 214–216, 224–227, 228–230, 235–236, 243–246, 248–250, 251–253, 257–259, 266–269, 271–273. In truth, Bird's claimed revenues were a mirage, as were its claims to have met or exceeded its guidance. *Id.* ¶¶ 87, 91, 92, 97–99.

A second category of false and misleading statements includes identified drivers for financial results. Defendants cited an array of explanations for Bird's (apparent) revenue growth, but they did not disclose that Bird recognized revenue without *any* accounting for its collectibility. *Id.* ¶¶ 82, 83, 86, 90, 94, 150–151, 160–161, 162–164, 166–167, 169–170, 182–183, 187–191, 201–203, 210–213, 224–227, 231–234, 243–246, 254–256, 266–269, 271–273.

The third and final category of false and misleading statements includes false certifications—of GAAP compliance, effective internal controls, and Sarbanes-Oxley compliance. *Id.* ¶¶ 130–134, 138–139, 145–146, 173–174, 179–181, 195–197, 198–200, 217–219, 220–223, 237–239, 240–242, 260–262, 263–265.

Investors remained unaware that anything was wrong until September 21, 2022, when Bird announced that it was terminating VanderZanden and Ling, effective immediately, replacing its CFO with an outsider, Ben Lu. *Id.* ¶¶ 6, 104. VanderZanden did not tie the changes to improper revenue recognition, instead linking his departure to Bird's plan to increase profitability. *Id.* ¶ 105. Then, beginning on November 14, 2022, less than two months after the new CFO came in, Bird disclosed that it had overstated its revenue for more than two years by recognizing unpaid customer rides. *Id.* ¶¶ 6, 107, 110–112, 117–123. As a result, Bird

MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT

011147-11/2417834 V1

revealed that its financial reports "should no longer be relied upon," restated its financial performance reflecting materially less revenue than previously reported, and admitted to material weaknesses in internal disclosure controls and processes over financial reporting. *Id.* ¶¶ 6, 107, 110–112, 117–123. Bird announced in connection with its Q3 2022 financial statements that it had identified material weaknesses in disclosure controls and procedures that its Audit Committee had uncovered in connection with its internal investigation, and that it had no timetable for remediating those weakness. *Id.* ¶¶ 124, 125. Bird explained that the company discovered their misstatement in connection with the routine preparation of consolidated financial statements for the quarter ending September 30, 2022. *Id.* ¶ 107. Lu noted that these errors were apparent from Bird's rider subledger. *Id.* ¶ 112. These announcements caused Bird's stock to depreciate substantially, and analysts suspended or discontinued their coverage of the company. *Id.* ¶¶ 6, 106, 109, 113–116, 126.

On September 11, 2023, Defendants filed the MTD, which identified purported deficiencies in the CAC, including allegations regarding the Defendants' scienter and that Defendants McNeill and Mutrie were makers of false statements. Lead Plaintiff respectfully submits that the SAC addresses the purported deficiencies described in the MTD, as summarized below.

First, the SAC contains a new negligence claim for violation of Section 14(a) of the Securities Exchange Act, alleging that Switchback II's proxy statement and solicitation materials regarding the proposed Merger with Bird was materially misleading, and new allegations relevant to that claim, including:

- Adding Defendants liable under Section 14(a), consisting of directors of Switchback II at the time of the Merger with Bird. SAC ¶¶ 27–32.
- Adding additional details regarding the proxy solicitation in connection with the Merger. SAC ¶¶ 83–86, 90–91.

MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT
011147-11/2417834 V1

- Adding false statements made in the proxy statement and solicitation materials. SAC ¶¶ 163–165, 171, 176–178, 192–193, 203–209.
- Adding other details regarding the Section 14(a) claim and a related Section 20(a) control person claim. SAC ¶¶ 368–393.
- Second, among the new false and misleading statements made by Defendants leading up to the Merger, the SAC includes representations undisputedly made by Defendants McNeill and/or Mutrie. SAC ¶¶ 153–154, 158–162, 193, 205.

Finally, the SAC includes new allegations in support of scienter with respect to the fact that Bird issued a "going concern" warning. SAC ¶¶ 125, 311, 315.

## III.   ARGUMENT

**A.   Under Rule 15(a)'s Lenient Standard and Because Justice so Requires, the Court Should Grant Plaintiffs Leave to file the SAC**

Rule 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009). The U.S. Supreme Court held that trial courts should freely grant leave to amend absent special circumstances, such as: (1) undue delay; (2) bad faith or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies with previous amendment; (4) prejudice to the opposing party; and (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The party opposing the amendment carries the burden of showing why leave to amend should be denied." *Film Allman, LLC v. N.Y. Marine & Gen. Ins. Co.*, 2015 WL 4093536, at *2 (C.D. Cal. July 7, 2015) (Wright II, J.) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186-87 (9th Cir. 1987)).

Here, Defendant cannot show the presence of any special circumstance that would warrant denial of leave to amend. *See, e.g., id.* at *2 (granting leave to amend where defendants failed to carry their burden showing why leave to amend should be

denied); *De Luca v. City of Hueneme*, 2014 WL 7186983, at *3 (C.D. Cal. Dec. 17, 2014) (Wright II, J.) (same).

## B.     The Proposed Amendments Are Not Futile

An amendment is futile only if the court determines "that the pleading could not possibly be cured by the allegation of other facts." *Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (citation omitted). "While some courts liken the futility inquiry with that of a motion to dismiss, most recognize that denial of leave to amend on futility grounds is rare." *Defazio v. Hollister, Inc.*, 2008 WL 2825045, at *2 (E.D. Cal. July 21, 2008) (quotation omitted). Here, the proposed amendments are not futile because they state meritorious Proxy Claims, new actionable statements made by Defendants Mutrie and McNeill, and additional facts that establish a strong inference of Defendants VanderZanden's and Ling's scienter, which considered holistically with the rest of the SAC adequately state claims that Defendants violated the federal securities laws.

### 1.     The SAC Asserts Viable Proxy Claims

"To state a claim under § 14(a) and Rule 14a–9, a plaintiff must establish that '(1) a proxy statement contained a material misrepresentation or omission which (2) caused the plaintiff injury and (3) that the proxy solicitation itself, rather than the particular defect in the solicitation materials, was an essential link in the accomplishment of the transaction.'" *N.Y.C. Emps.' Ret. Sys. v. Jobs*, 593 F.3d 1018, 1022 (9th Cir. 2010), *overruled on the other grounds by Lacey v. Maricopa Cty.*, 693 F.3d 896 (9th Cir. 2012) (quoting *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 228 (3d Cir. 2007)). There is also a loss causation requirement. *Id.* "The requisite state of mind under [Section 14(a)] is negligence." *UTStarcom*, 560 F. Supp. 2d at 887.

Here, the SAC satisfies each of these elements. As a preliminary matter, the Proxy statement and Solicitation Materials made untrue statements of material fact.

SAC ¶¶ 163–165, 171–73, 176–178, 192–195, 203–212. Among other things, the solicitation materials inflated Bird's reported revenues and misrepresented and failed to disclose that:

(i)     Bird had improperly recognized Sharing Revenue. Specifically, for certain customers with insufficient preloaded "wallet" balances, Bird's business systems recorded revenue for uncollected balances following the completion of certain Rides that should not have been recorded;

(ii)     Bird's undisclosed improper recognition of Sharing Revenue resulted in a material overstatement of Sharing Revenue, understatement of deferred revenue in the consolidated balance sheets, and misstatement of metrics dependent upon these figures;

(iii) Bird's consolidated financial statements relating to compliance with GAAP were false and misleading and omitted to disclose material facts because Bird violated GAAP and did not account for Sharing Revenue according to ASC 840 when it failed to account for the collectability of its Sharing Revenue;

(iv) the statements about the drivers for Bird's financial performance were false and misleading because they omitted the material fact that the claimed increase in Sharing Revenue, and thus total revenue and other related financial measures, was driven in part by Bird's false and misleading statement of its Sharing Revenue; and

(v) Bird had material weaknesses in its internal controls over financial reporting.

*Id.*

In addition, the proxy materials caused Plaintiff Christo Givas and the Class injury. As a direct result of the Proxy Defendants' negligent preparation, review, and dissemination of the false and/or misleading Proxy, Plaintiffs and the Class were precluded from exercising their right to seek redemption of their shares prior to the Merger on a fully informed basis and were induced to vote their shares and accept inadequate consideration in connection with the Merger. The false and misleading

011147-11/2417834 V1

Proxy used to obtain shareholder approval of the acquisition deprived Plaintiffs and the Class of their right to a fully informed shareholder vote in connection therewith and the full and fair value for their Switchback shares. SAC at ¶¶ 368–372.

The SAC also shows how proxy solicitation itself, rather than the particular defect in the solicitation materials, was "an essential link in the accomplishment of the transaction" that caused Plaintiffs' losses. The SAC plausibly alleges that the challenged statements and omissions, which they allege appeared in the proxy statement and solicitation materials, "were material in that a reasonable stockholder would have considered them important in deciding how to vote on the Merger," "significantly alter[ed] the 'total mix' of information made available in the Proxy," and "induced [Switchback shareholders] to vote their shares and accept inadequate consideration in connection with the Merger." SAC ¶¶ 374–387. *See also In re Hot Topic Sec. Litig.*, 2014 WL 7499375, at *11 (C.D. Cal. May 2, 2014) (concluding plaintiffs had satisfied their pleading obligations by alleging that "the Proxy Statement makes a series of misrepresentations and omissions that misled shareholders into believing that $14.00 per share was a fair transaction").

Moreover, the SAC adequately pleads loss causation. Plaintiffs allege that the extent of Bird's problems was revealed in a series of disclosures on September 21, 2022 and November 14–18, 2022, which caused the price of Bird's shares to decline well below the share price on November 2, 2021, the date of the shareholder vote on the Merger. SAC ¶¶ 323–337, 373.

Further, the SAC adequately alleges Defendants' negligence. The SAC explains that given Defendants' status as officers and/or directors of Switchback and/or post-Merger Bird, each of the Proxy Defendants breached their duty owed to shareholders by disseminating inaccurate and untruthful information with respect to Bird's financial condition and results of operations, and by failing to correct promptly the proxy statements. SAC ¶¶ 361–366.

-9-                    No. 2:22-cv-08406-ODW (AGRX)
MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT
011147-11/2417834 V1

Finally, the SAC demonstrates that the Proxy Defendants were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act, as because of their positions of control and authority as senior officers and directors, they were able to, and did, control the contents of the proxy statement and solicitation materials and did in fact exercise their power and authority to cause the Company to engage in the alleged wrongful acts. SAC at ¶¶ 361–366, 388–392.

**2.      The SAC Asserts Actionable New Statements Made by Defendants Mutrie and McNeill**

In the MTD, Defendants argued that the operative complaint failed to allege Defendants Mutrie and McNeill were makers of any alleged false and misleading statements. MTD at 17. The SAC addresses this challenge by including new false and misleading statements made by personally by Defendants McNeill and Mutrie leading up to the closing of the Merger. SAC ¶¶153–154, 158–162, 193, 205.

For example, in the May 12, 2021 Switchback-Bird press release announcing the proposed business combination, both Defendants Mutrie and McNeill are quoted as emphasizing Bird's "compelling current revenues" as one of the reasons Switchback decided to acquire Bird. SAC ¶¶158–160.

Defendant Mutrie later reiterated Bird's "compelling current revenues" at the May 12, 2021 investor call (*id.* ¶ 161), published an August 19, 2021 investor presentation falsely reporting Bird's revenues (*id.* ¶¶ 179–181), and misrepresented Bird's financial performance at a September 2, 2021 investor conference (*id.* ¶¶ 192–193).

Further, in October 2021, Defendants Mutrie and McNeill deceptively identified Bird's management's demonstrated execution excellence since inception as the drivers for Bird continuing to deliver strong operating and financial results, while omitting to disclose the financial results were inflated as a result of improper revenue recognition practices. *Id.* ¶¶ 203–207.

-10-                    No. 2:22-cv-08406-ODW (AGRX)

As explained in the SAC, these statements which were undisputedly made by Defendants Mutrie and/or McNeill, constitute actionable misrepresentation and omissions.

### 3.      The SAC Includes New Scienter Facts

Finally, the SAC provides additional motive and opportunity allegations in support of Defendants VanderZanden's and Ling's scienter. SAC ¶¶ 311, 315. The SAC notes that Bird warns in its proxy statements that Bird had incurred significant operating losses in the past and may not be able to achieve or maintain profitability in the future and its longevity may depend upon obtaining additional financing. *Id.* Thereafter, only a year after completing the Merger, Bird issued a "going concern" warning, indicating that without additional funding, the Company would be unable to meet its obligations over the next year. *Id.* ¶ 125. The SAC explains that these circumstances gave Defendants Ling and VanderZanden additional motive to exaggerate Bird's financial performance and its financial prospects to complete the merger and receive the cash necessary for Bird to continue operations. *Id.* ¶¶ 311, 315; *see, e.g.*, *Skiadas v. Acer Therapeutics Inc.*, 2020 WL 3268495, at *11, 12 (S.D.N.Y. June 16, 2020) (company's "going concern" status gave defendants an "incentive to gamble" because "[a]n executive at a company that will go belly up if it fails to fundraise has different incentives from a generic corporate insider"). These facts, considered holistically with the SAC's multiple other categories of factual allegations, support a strong inference of scienter.

## C.      There Is No Undue Delay

Plaintiffs did not unduly delay in bringing the proposed amendments. While the Proxy Claims arise from the same conduct, transaction, and occurrence set out in the operative complaint, Plaintiffs did not have individual standing to assert these claims on behalf of the putative class. This is because, in contrast to Mr. Givas, Plaintiffs purchased their Bird shares after the August 16, 2022, record date for the

MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT

011147-11/2417834 V1

Merger. Immediately after being retained by Mr. Givas, a class member with standing to assert such claims, Lead Counsel and Plaintiffs informed both the Court and Defendants of their intent to amend. ECF No. 80. Then, after sharing a copy of the SAC with Defendants and meeting and conferring with Defendants in an effort to avoid motion practice, Plaintiffs promptly filed their motion for leave to amend in accordance with their representations to the Court and the stipulated ordered briefing schedule. ECF Nos. 80, 83. Under these circumstances, it simply cannot be said that undue delay has occurred here. And in any event, "[u]ndue delay by itself, however, is insufficient to justify denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 757-58 (9th Cir. 1999).

## D.   Plaintiffs Did Not Engage in Bad Faith or Have a Dilatory Motive

"[F]or a court to find that a moving party filed for leave to amend in bad faith, the adverse party must offer evidence that shows 'wrongful motive' on the part of the moving party." *Wixon v. Wyndham Resort Dev. Corp.*, 2007 WL 3101331, at *2 (N.D. Cal. Oct. 22, 2007). There is absolutely nothing in the record that could evidence such a motive by Plaintiffs.

Indeed, the inclusion of additional plaintiff Christos Givas is appropriate given his ability to act as a potential class representative for the Proxy Claims. Courts in this Circuit and elsewhere recognize that it is appropriate under the PSLRA for lead plaintiffs to bring in additional named plaintiffs for the purposes of providing an appropriate potential class representative to bring additional claims on behalf of the Class. *See Baker v. Twitter, Inc.*, 2023 WL 6932568, at *13 (C.D. Cal. Aug. 25, 2023) ("Lead Plaintiffs have a responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims"); *Bodri v. GoPro, Inc.*, 2016 WL 1718217, at *6 (N.D. Cal. Apr. 28, 2016) ("Being a lead plaintiff is not the same thing as being a class representative, and additional

-12-                    No. 2:22-cv-08406-ODW (AGRX)

named plaintiffs may be added later to represent subclasses of plaintiffs with distinct interests or claims.") (declining to appoint an additional co-lead plaintiff because a lead plaintiff can add additional named plaintiffs).[2]

*In re Portal Software, Inc. Sec. Litig.*, is instructive. There, the court granted a motion to amend in a case brought under the PSLRA, allowing plaintiffs to add claims under the Securities Act of 1933, and to "bring in additional plaintiffs for the purpose of satisfying the requirements of FRCP 23" as to those Securities Act claims, because the court appointed lead plaintiff would have been an atypical class representative. 2005 WL 8179740, at *2. As a result, "courts in this … circuit regularly appoint both lead and additional plaintiffs as class representatives in PSLRA class actions." *In re Twitter Inc. Sec. Litig.*, 326 F.R.D. 619, 627 (N.D. Cal. 2018) (collecting cases).

During the meet and confer, Defendants argued that amending the complaint to add a plaintiff who did not go through the lead plaintiff selection process and who brings a claim that the lead plaintiff lacks standing to assert is improper under the PSLRA. But as one Court of Appeals has recognized, "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action. Rather, because the PSLRA mandates that courts must choose a party who has, among other things, the largest financial stake in the outcome of the case, it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 (2d Cir. 2004).

---

[2] *See also In re Glob. Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003) ("Lead Plaintiffs have a responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims. By naming additional plaintiffs who, as purchasers of different categories of securities, have standing to bring claims on behalf of the various potential subclasses of securities purchasers, the Lead Plaintiffs in this case have simply exercised that responsibility.").

MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT
011147-11/2417834 V1

## E.     Defendants will not be prejudiced by the amendment

Defendants will not be unduly prejudiced if Plaintiffs are granted leave to amend at this early stage of the litigation. Although "[t]he consideration of prejudice to the opposing party [ ] carries the greatest weight" in the Court's analysis, *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003), only "undue prejudice" warrants denial of leave to amend, *DCD Programs, Ltd.*, 833 F.2d 183 at 187.

"The burden of having to defend a new claim alone is not undue prejudice under Rule 15." *Dep't of Fair Emp. & Hous. v. L. Sch. Admission Council, Inc.*, 2013 WL 485830, at *5 (N.D. Cal. Feb. 6, 2013). Rather, in deciding whether undue prejudice exists, district courts consider the current stage of the litigation, whether the plaintiff received leave to amend in the past, if the amendment would encourage costly and harassing litigation, and the potential strain on the court's resources. *Von Pappenheim v. Portland Boxing & Wrestling Co.*, 442 F.2d 1047, 1054 (9th Cir. 1971). Courts in the Ninth Circuit have found "undue prejudice" where the proposed amendment "would have greatly altered the nature of the litigation and would have required defendants to have undertaken, at a late hour, an entirely new course of defense." *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).

"Courts typically find prejudice when a party seeks to amend its complaint much later in the litigation. For example, an amendment may prejudice the defendant when it requires the district court to reopen discovery, or it results in a trial delay or new case schedule." *Wash. Sch. Risk Mgmt. Pool v. Am. Re-Ins. Co.*, 2023 WL 5036075, at *6 (W.D. Wash. Aug. 8, 2023). Here, the proposed amendment would not unduly prejudice Defendants. This case is at its infancy as no motion to dismiss has been decided, no discovery has been taken, and no pretrial deadlines have been set.

-14-     No. 2:22-cv-08406-ODW (AGRX)
MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT
011147-11/2417834 V1

In addition, this is only the first time Plaintiffs are seeking leave to amend a complaint they themselves filed. The initial complaint was filed by Mr. Arias, not Lead Plaintiff, and the current complaint is the first filed by Lead Plaintiff.

Further, amendment does not encourage costly and harassing litigation. The proposed amendments assert the same central theory of misconduct over the same time period. And Plaintiffs have amended at a stage before Defendants have expended significant resources defending the case.

Finally, the amendment does not strain but rather conserves the Court's resources as it has not issued a decision on the pending motion to dismiss. Indeed, even if the Court were to move forward with ruling on the motion to dismiss, it could still grant Plaintiff leave to amend. This is why courts are typically reluctant to deny a plaintiff leave to amend simply because a motion to dismiss is pending. *See, e.g.*, *In re AMBAC Fin. Grp., Inc. Deriv. Litig.*, 2008 WL 5262428, at *1 (S.D.N.Y. Dec. 11, 2008) (granting plaintiff leave to amend after concluding that "prejudice is not at issue—even if the pending motion to dismiss were granted, the Court would still be within its discretion to grant leave to amend if the pleading defects could be cured in an amendment"); *see also Nejo v. Wilshire Credit Corp.*, 2010 WL 2888905, at *2 (S.D. Cal. July 21, 2010) (granting leave to amend complaint despite a pending motion to dismiss because amendment would only cause "garden variety delay already contemplated by Rule 15(a)'s liberal amendment policy").

## IV.   CONCLUSION

For all these reasons, Plaintiffs respectfully request that the Court grant their Motion.

DATED: December 18, 2023

Respectfully submitted,

*/s/ Lucas E. Gilmore*
Lucas E. Gilmore (250893)
Reed R. Kathrein (139304)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
lucasg@hbsslaw.com
reed@hbsslaw.com

Nathan Emmons (*pro hac vice* forthcoming)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
nathane@hbsslaw.com

*Lead Counsel and Counsel for*
*Lead Plaintiff David Boulware*

Laurence M. Rosen, Esq. (SBN 219683)
355 S. Grand Avenue, Suite 2450
**THE ROSEN LAW FIRM, P.A.**
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
lrosen@rosenlegal.com

Jonathan Stern (*pro hac vice* forthcoming)
**THE ROSEN LAW FIRM, P.A.**
275 Madison Ave., 40th Floor
New York, NY 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
jstern@rosenlegal.com

*Counsel for Additional Plaintiff*
*Lawrence Lou*

-16-    No. 2:22-cv-08406-ODW (AGRX)

MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT

011147-11/2417834 V1

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiff David Boulware, certifies that this brief contains 4,803 words, which complies with the word limit of L.R. 11-6.1.

DATED: December 18, 2023        */s/ Lucas E. Gilmore*
                                Lucas E. Gilmore (250893)

MOTION FOR LEAVE TO FILE [PROPOSED] SECOND AMENDED COMPLAINT

011147-11/2417834 V1