O

# United States District Court
# Central District of California

MARIO ARIAS, et al.,

Plaintiff,

v.

BIRD GLOBAL, INC. et al.,

Defendants.

KAREN CAIN, et al.,

Consolidated Plaintiff,

v.

BIRD GLOBAL, INC. et al.,

Consolidated Defendants.

Lead Case №:
2:22-cv-08406-ODW (AGRx)

Member Case №:
2:22-cv-09178-ODW (AGRx)

**ORDER GRANTING RENEWED MOTION TO AMEND [116]; AND DENYING MOTION TO DISMISS AS MOOT [72]**

## I. INTRODUCTION

This is a consolidated class action for securities fraud under Sections 10(b) and 20(a) of the Securities Exchange Act ("Exchange Act") and Rule 10b-5 promulgated thereunder. (Compl. ¶ 1, Dkt. No. 1; Order Consol., Dkt. No. 38.) Defendants Travis VanderZanden, Yibo Ling, Jim Mutrie, and Scott McNeill ("Individual Defendants") now move to dismiss the Consolidated Amended Complaint ("CAC") under Federal

Rule of Civil Procedure ("Rule") 12(b)(6). (Mot. Dismiss, Dkt. No. 72.) Lead Plaintiff David Boulware also moves for leave to amend under Rule 15(a)(2). (Renewed Mot. Amend ("Motion" or "Mot."), Dkt. No. 116.) For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Boulware's Motion for Leave to Amend. Consequently, the Court **DENIES AS MOOT** Individual Defendants' Motion to Dismiss.[1]

## II. BACKGROUND[2]

On November 2, 2021, Bird, a micromobility company engaged in delivering electric transportation solutions, merged with Switchback II Corporation, a special purpose acquisition company. (Compl. ¶ 7; CAC ¶ 79.)[3] As a result of the merger, Bird became a publicly traded entity. (CAC ¶ 79.) On September 21, 2022, Bird publicly announced that it ousted its most senior executives, VanderZanden and Ling. (*Id.* ¶ 104.) After the announcement, Bird's share price dropped. (*Id.* ¶ 106.)

On November 14, 2022, Bird filed its Form 8-K "announcing that [Bird] had overstated its revenue for more than two years by recognizing unpaid customer rides." (*Id.* ¶ 107.) Bird also disclosed that it recorded revenue on certain trips, even though customers lacked sufficient preloaded wallet balances. (*Id.*)

On the same day, Bird filed a notification of late filing of Form NT10-Q with the Securities and Exchange Commission. (*Id.* ¶ 108.) Bird indicated that it could not timely file its quarterly report for the period ending on September 30, 2022. (*Id.*) By the end of the trading day, Bird's share price dropped again. (*Id.* ¶ 109.)

The following day, Goldman Sachs suspended its investment rating and price target for Bird, as it could not estimate Bird's "financial performance." (*Id.* ¶ 114.) Consequently, Bird's share price dropped for a third time. (*Id.* ¶ 115.)

---

[1] Having carefully considered the papers filed in connection with the Motions, the Court deemed the matters appropriate for decision without oral argument. Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

[2] The Court incorporates by reference the detailed background in its order appointing Boulware as Lead Plaintiff and summarizes only the background pertinent to the disposition of the instant Motions. (Order Appointing Lead Pl. 2–5.)

[3] Record cites are to the docket of the lead case (*Arias*) unless otherwise indicated.

On November 17, 2022, Mario Arias filed this federal securities class action against Bird, VanderZanden, and Ling alleging violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. (Compl. ¶¶ 1, 6–14.)

On November 18, 2022, Bird released financial results for 2020, 2021, and the first two quarters of 2022. (CAC ¶ 117.) It later disclosed that it identified errors in its business system configuration by "record[ing] revenue for uncollectible balances." (*Id.* ¶ 124.) As a result, Bird's share price dropped even further. (*Id.* ¶ 126.)

On August 15, 2023, Boulware filed the CAC alleging violations of (1) Section 10(b) and Rule 10b-5 against Bird and Individual Defendants, and (2) Section 20(a) against Individual Defendants. (CAC ¶¶ 13–23, 314–24, 325–31.)

On September 11, 2023, Individual Defendants moved to dismiss the CAC under Rule 12(b)(6). (Mot. Dismiss 9.) On December 18, 2023, Boulware first moved for leave to amend. (First Mot. Amend 1, Dkt. No. 84.) Shortly thereafter, Bird filed a voluntary Chapter 11 bankruptcy petition. (Notice Bankr. Suggestion, Dkt. No. 85.) On January 18, 2024, the Court stayed this action pursuant to 11 U.S.C. § 362 and denied as moot the parties' competing motions. (Order Stay, Dkt. No. 92.)

On June 6, 2025, the parties stipulated to lift the stay as to Individual Defendants. (Stip. 4, Dkt. No. 106.) The Court granted the parties' stipulation, lifted the stay as to Individual Defendants only, and agreed to consider the parties' previously filed motions. (Min. Order Lift Stay 1, Dkt. No. 108.) On November 7, 2025, the Court denied Boulware's First Motion to Amend. (Min. Order Den. Mot. Amend, Dkt. No. 112.) The Court found that Boulware's proposed amended claims against Individual Defendants implicated Bird and that Individual Defendants' liability "appear[ed] to depend on Bird's actions or omissions." (*Id.* at 3.) The Court granted Boulware leave to refile the motion for leave to amend and Proposed Second Consolidated Amended Complaint ("PSCAC"), modified in light of the Court's findings. (*Id.*) The Court deferred ruling on Individual Defendants' Motion to Dismiss. (*Id.*)

Boulware now brings a Renewed Motion to Amend. (Mot. 1.) Concurrently with this Motion, Boulware filed a Notice of Dismissal with prejudice pursuant to Rule 41(a)(1) as to Bird only. (Notice Dismissal, Dkt. No. 115.)

## III. LEGAL STANDARD

Rule15 (a)(2) provides that courts "should freely give leave [to amend] when justice so requires." Courts analyze the following factors from *Foman v. Davis* to determine whether leave to amend should be granted: (1) undue prejudice to the opposing party, (2) futility of amendment, (3) bad faith or dilatory motive by the movant, (4) undue delay, and (5) repeated failure to cure deficiencies (the "*Foman* factors"). 371 U.S. 178, 182 (1962); *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013). Of these factors, prejudice carries the greatest weight. *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a *presumption* under Rule 15(a) in favor of granting leave to amend." *Id.* at 1051. The party opposing the amendment bears the burden of showing why leave to amend should be denied. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

## IV. DISCUSSION

Boulware seeks leave to amend under Rule 15(a)(2) to remove all claims against Bird and replead claims only against Individual Defendants "that arise from their own actionable statements, omissions, and breaches of duties" and for which Individual Defendants "have independent liability." (Mot. 1.) Boulware also seeks to add a new plaintiff and claim under Section 14(a) of the Exchange Act for Individual Defendants' "false and misleading statements and omissions in the proxy statement and other materials" soliciting Switchback shareholders' approval of Switchback's merger with Bird (the "Switchback Proxy Claim"). (*Id.* at 2.) Individual Defendants argue that amendment is futile, prejudicial, and unduly delayed. (Opp'n 11, Dkt. No. 117.) They do not argue bad faith or repeated failure to cure. (*See generally id.*)

**A. Futility**

The first *Foman* factor is futility. *Foman*, 371 U.S. at 182. "Leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018). A proposed amendment is futile only if no facts can be proved under the amended pleading "that would constitute a valid and sufficient claim or defense." *Sweaney v. Ada County*, 119 F.3d 1385, 1393 (9th Cir. 1997).

Individual Defendants argue that amendment is futile because the PSCAC fails to cure the previously identified deficiencies in the securities fraud claims under Section 10(b), and the Switchback Proxy Claim is improper. (Opp'n 14–29.)

*1. Repleaded Securities Fraud Claims—Section 10(b)*

Individual Defendants argue that amendment to Boulware's Section 10(b) claims is futile because it fails to support Boulware's scienter allegations. (Opp'n 15.)

"To establish liability under [Section] 10(b) and Rule 10b-5, a private plaintiff must prove that the defendant acted with scienter, a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319 (2007) (citation modified). In evaluating scienter, courts must "consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff." *Id.* at 324. Under the Private Securities Litigation Reform Act's ("PSLRA"), any private securities complaint alleging that the defendant made a false or misleading statement must: (1) "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading," 15 U.S.C. § 78u–4(b)(1), and (2) "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," *id.* § 78u–4(b)(2).

Individual Defendants fail to meet their burden to show that amendment is futile. In the PSCAC, Boulware supplements the scienter allegations against Ling and VanderZanden. (PSCAC ¶¶ 302, 306.) He alleges that Ling and VanderZanden, by virtue of their executive roles, knew Bird faced substantial operating losses. (*Id.*)

According to Boulware, these circumstances gave Ling and VanderZanden "motive to exaggerate Bird's revenue, financial metrics based on this figure and its financial prospects in order to complete the merger" and obtain the necessary capital to continue operations. (*Id.*) These allegations, viewed holistically with all allegations in the PSCAC, could plausibly support the necessary scienter. *See Tellabs*, 551 U.S. at 310 ("While omissions and ambiguities count against inferring scienter, the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically."). Thus, at this stage, the Court cannot conclude that amendment is futile.

*2. New Switchback Proxy Claim—Section 14(a)*

In the PSCAC, Boulware seeks to add a new plaintiff and claim under Section 14(a) of the Exchange Act relating to Individual Defendants' false and misleading statements and omissions in their proxy statement and materials soliciting Switchback shareholders' approval of Switchback's merger with Bird ("Merger Proxy Materials"). (PSCAC ¶¶ 358–70; Mot. 2.) Individual Defendants argue that amendment is futile because the new Switchback Proxy Claim is procedurally improper, time-barred, and fails to adequately allege negligence. (Opp'n 16–29.)

a. <u>Procedural Propriety</u>

Individual Defendants argue the Switchback Proxy Claim is procedurally improper because Boulware did not provide notice of the new claim to Switchback investors. (*Id.* at 16–19.) Boulware argues "additional notice" is not required because the new claim relates back to the original claims. (Reply 2–3, Dkt. No. 120.)

Under the PSLRA, a plaintiff must give notice to investors of the pendency of a class action, the claims asserted therein, the purported class period, and the right to move to be lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A). "[T]he central purpose of the notice requirement . . . is to enable the member of the putative class with the 'largest financial interest in the relief sought by the class' to make a rational decision whether to intervene." *Ravens v. Iftikar*, 174 F.R.D. 651, 659 (N.D. Cal. 1997) (quoting 15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb)). Notice need not be republished when the

proposed amendment does not substantially change the facts, legal theories, or class period. *See In re Int'l Rectifier Corp. Sec. Litig.*, No. 2:07-cv-02544-JFW (VBKx), 2008 WL 4555794, at *23 (C.D. Cal. May 23, 2008) (declining to require the plaintiffs to republish notice when the amendment extended the class period but did not change the legal theories or facts giving rise to the action); *but see Vanleeuwen v. Keyuan Petrochemicals, Inc.*, No. 2:11-cv-09495-PSG (JCGx), 2013 WL 2247394, at *5–6 (C.D. Cal. May 9, 2013) (requiring new notice when the amended complaint alleged a new factual scenario and added claims by a new class of plaintiffs).

Here, the proposed Switchback Proxy Claim implicates a distinct group of investors who were not adequately represented during the PSLRA lead-plaintiff process. Indeed, the existing Section 10(b) fraud claim arises from the drop in share value after the discovery of Bird's accounting errors and financial reporting; it belongs to Bird shareholders who suffered substantial financial losses as a result. (CAC ¶¶ 104–15.) By contrast, the proposed Switchback Proxy Claim arises from alleged misstatements in the Merger Proxy Materials; it belongs principally to former Switchback shareholders who voted in favor of the merger. (PSCAC ¶¶ 194–203.) Moreover, the original PSLRA notices did not identify the Merger Proxy Materials or a class of Switchback investors. (*See* Decl. Lisa M. Northrup ISO Opp'n ("Northrup Decl.") ¶¶ 2–5, Exs. 1–5 ("Notices"), Dkt. Nos. 117-1 to 117-6.) For instance, one notice alerted Bird investors that the class action against Bird seeks to recover damages under Sections 10(b) and 20(a) and Rule 10b-5. (Northrup Decl. Ex. 3, Dkt. No. 117-4.) The notices were silent as to any claims by Switchback investors arising from the Merger Proxy Materials. (*See generally* Notices.) Thus, the Switchback Proxy Claim involves a different class period, and different class claims by a different category of investors. As amendment seeks to add a new claim by a new class of people, notice republication was required, and because notice was not republished, the Switchback Proxy Claim is procedurally improper. *Vanleeuwen*, 2013 WL 2247394, at *5–6. Thus, amendment to add this new claim at this late stage would be futile.

b. Timeliness

Individual Defendants also argue that amendment to add the new Switchback Proxy Claim is futile because it is barred by the statute of limitations. (Opp'n 19–20.)

"The statute of limitations for claims under Section 14(a) is the earlier of one year after the discovery of the violation or three years from the alleged violation." *In re Asyst Techs., Inc. Derivative Litig.*, No. C-06-04669 EDL, 2008 WL 2169021, at *5 (N.D. Cal. May 23, 2008).

Here, Boulware alleges that the fraud underlying the Switchback Proxy Claim "was revealed in a series of disclosures . . . on September 21, 2022 and November 14–18, 2022." (PSCAC ¶ 357.) Thus, Boulware's deadline to move to amend to add the new Switchback Claim would have been a year after the fraud discovery and in no event later than three years from the alleged violation. Boulware did not seek to add the new Switchback Proxy Claim until the instant Motion on December 12, 2025, (Mot. 2; PSCAC ¶¶ 358–70), well after the applicable statute of limitations expired. Thus, the Switchback Proxy Claim is time-barred and amendment as to this claim is futile. *See Krause v. Book*, 714 F. App'x 652, 655 (9th Cir. 2017) (affirming the denial of a motion for leave to amend because the plaintiff's new claim was barred by the applicable statute of limitations). In light of this finding, the Court declines to reach Individual Defendants' additional futility arguments.

In sum, the futility factor weighs in favor of granting leave to amend as to Boulware's repleaded securities fraud claims and against granting leave to amend as to the new proposed plaintiff and new Switchback Proxy Claim.

**B. Undue Delay**

The next *Foman* factor is undue delay. *Foman*, 371 U.S. at 182. "The undue delay inquiry focuses on whether the plaintiff knew of the facts or legal bases for the amendments at the time the operative pleading was filed and nevertheless failed to act promptly to add them to the pleadings." *McFall v. Stacy & Witbeck, Inc.*, No. 14-cv-04150-JSC, 2016 WL 2851589, at *3 (N.D. Cal. May 16, 2016).

Individual Defendants argue that Boulware unduly delayed amendment as to the new proposed plaintiff and Switchback Proxy Claim. (Opp'n 29–30.) A plaintiff unduly delays amendment when it knew or should have known the facts and theories supporting amendment earlier in the litigation. *Eminence*, 316 F.3d at 1052.

Here, Boulware did not seek leave to amend to add the new Switchback Proxy Claim until December 12, 2025. Moreover, the new Switchback Proxy Claim is not premised on newly discovered facts. As discussed above, the fraud underlying the Switchback Proxy Claim "was revealed" in late 2022, (PSCAC ¶ 357), and rests on public information available to Boulware and the proposed new plaintiff since the inception of this litigation, including the relevant Merger Proxy Materials and various other disclosures. As Boulware knew or should have known of the facts underlying the new claim long before moving for leave to amend, he unduly delayed amendment as to the new proposed plaintiff and Switchback Proxy Claim.

Thus, the undue delay factor weighs against granting leave to amend as to the proposed new plaintiff and new Switchback Proxy Claim.

**C. Prejudice**

The next *Foman* factor is prejudice. *Foman*, 371 U.S. at 182. A proposed amendment may unduly prejudice the opposing party when it changes "the theory and the operative facts of the claim," *Sonoma County*, 708 F.3d at 1118, or when it adds a new claim that advances "different legal theories and require[s] proof of different facts," *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990).

Individual Defendants argue that amendment as to the new Switchback Proxy Claim would prejudice them by expanding the claims and increasing litigation costs. (Opp'n 30–31.) Prejudice is heightened when a plaintiff seeks to add a new theory late in the litigation. *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989). Such prejudice may result when amendment adds new claims based on different legal theories or requires proof of different facts, alters the nature and scope of the litigation, or forces the defendants to expend substantial resources

investigating claims that could have been asserted earlier. *See, e.g.*, *Jackson*, 902 F.2d at 1387–88 (affirming denial of leave to add claims based on different legal theories and requiring proof of different facts).

Here, as discussed above, this action has proceeded as a securities fraud action centered on Bird's alleged misleading revenue accounting, its financial condition, and corrective disclosures. (*See generally* Compl.; CAC.) The new Switchback Proxy Claim would substantially expand the litigation by introducing new disclosure materials, a different class of investors, and distinct theories of liability. Unlike the existing Section 10(b) claim, which focuses on whether investors purchased or held securities at artificially inflated prices and later suffered losses when Bird issued corrective disclosures, the Switchback Proxy Claim focuses on whether former Switchback investors were misled into approving Switchback's merger with Bird. Therefore, the amendment would require Individual Defendants to defend against a materially different theory of wrongdoing involving different statements, reliance principles, injury-producing events, and damages.

Thus, the prejudice factor weighs against granting leave to amend as to the new proposed plaintiff and new Switchback Proxy Claim.

### D. Conclusion—*Foman* Factors

On balance, the *Foman* factors weigh in favor of granting leave to amend as to Boulware's Section 10(b) claim against Individual Defendants, and Boulware may amend accordingly. However, the factors weigh against amendment as to the new proposed plaintiff and Switchback Proxy Claim, and Boulware may not amend to add a new plaintiff and claim under Section 14(a).

## V. CONCLUSION

For the reasons discussed above, the Court **GRANTS IN PART** and **DENIES IN PART** Boulware's Renewed Motion to Amend. (Dkt. No. 116.) Boulware may file a Proposed Second Consolidated Amended Complaint, modified in light of the above rulings, within **fourteen (14) days** of this order as a separate document

pursuant to the Local Rules. *See* C.D. Cal. L.R. 15-1. Individual Defendants shall answer or otherwise respond within **fourteen (14) days** of the filing.

In light of the above disposition, the Court **DENIES AS MOOT** Individual Defendants' Motion to Dismiss. (Dkt. No. 72); *Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015) (finding that the "amended complaint supersedes the original" and thus a motion to dismiss a prior complaint is moot).

**IT IS SO ORDERED.**

June 11, 2025

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**